# GRACE SULLIVAN, PAUL SULLIVAN AND GEORGE SULLIVAN T/A ARDWICK CARRY-OUT v. BOARD OF LICENSE COMMISSIONERS FOR PRINCE GEORGE'S COUNTY

[No. 94, September Term, 1981.]

*Decided March 22, 1982.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*William V. Meyers,* with whom were *Meyers & Billingsley, P.A.* on the brief, for appellants.

*Salvatore A. Daniello,* with whom were *Daniello, Folstein, Niland & King* on the brief, for appellee.

Murphy, C. J., delivered the opinion of the Court.

The central issue in this case is whether under the provisions of Maryland Code (1957, 1981 Repl. Vol.), Article 2B, governing the sale and distribution of alcoholic beverages (the Act), the Board of License Commissioners for Prince George's County acted within its lawful authority in denying a licensee's application to construct and operate a drive-in window for the sale of packaged alcoholic beverages on the licensed premises.

I

Section 1 of Art. 2B entitled "Declaration of Policy" states that the purpose of the Act is "to obtain respect and obedience to law and to foster and promote temperance." The section further declares that it is the legislative intention:

> "that such policy will be carried out in the best public interest by empowering *[inter alia]* ... the various local boards of license commissioners ... with sufficient authority to administer and enforce the provisions of this article. The restrictions, regulations, provisions and penalties contained in this article are for the protection, health, welfare and safety of the people of this State."

Section 184 (a) of the Act vests "full power and authority [in local boards of license commissioners] to adopt such reasonable rules and regulations as they may deem necessary to enable them effectively to discharge the duties imposed upon them by this article."

Section 38 (a) (5) of the Act provides that the Board of License Commissioners for Prince George's County (the Board) is authorized "in addition to the other powers and duties conferred upon them, ... [to] prescribe rules and regulations concerning alterations and additions to any licensed premises and the use thereof."

Pursuant to its rule-making authority, the Board adopted Rule 44 entitled "Conditions and/or Restrictions on a

License." In pertinent part the rule provides that the Board, in its discretion, may:

"set conditions and/or restrictions on the granting of a new license, the granting of a transfer of an existing license, or the renewal of a license when it feels that these conditions are in the best interest of public accommodation and the need to protect the peace and safety of the community."

The Board also adopted Rule 46, entitled "Alterations and Additions," which provides:

"No license holder shall make any alteration or addition on a licensed premise or change the manner in which alcoholic beverages are dispensed without first obtaining permission from the Board.

"No license holder shall make any installations or alterations on the licensed premises until a permit has been obtained from the appropriate public authority of Prince George's County and until the approval of the Fire Authorities, Health Department, and Department of Licenses and Permits has been obtained where such approval is required by law." [1]

## II

The appellant holds a Class A, beer, wine and liquor license in Prince George's County, which under § 18 (a) of the Act authorizes it "to keep for sale and to sell all alcoholic beverages at retail, in any quantity [on the licensed premises] and to deliver the same in a sealed package or container which . . . may not be opened nor its contents consumed on the premises where sold." On September 25, 1980, the appellant presented plans to the Board for the expansion of the licensed premises, including the construction of a drive-in

---

[1]. The Board's rules define the term "licensed premise" in paragraph (p) as including "the building and land used in connection with the operation of the business conducted under the license, as defined in the original application or as amended and approved by the Board."

window through which to make sales of alcoholic beverages. Accompanying appellant's application to expand the licensed premises was the approval of zoning authorities for a special exception and of licensing authorities granting a building permit for the proposed construction. The Board, following an evidentiary hearing, granted permission to expand the appellant's building but denied permission to construct and operate a drive-in window. It said that the drive-in window would cause traffic problems exacerbating an "already hazardous" traffic situation. In addition, the Board made special mention of three other factors underlying its decision: the fact that "in the past three months, the Board of License Commissioners has found in violation and fined several licensees with Drive-In Windows for sales to minors and has others under surveillance; and that "this Board, in its discretion, considers Drive-In Windows to be a major contributor to sales to minors;" and that "service to the public through normal procedures is not in any way interrupted and that the accommodation of the public is easily obtained without the Drive-In Window adjunct to this property." The Board concluded:

> "The approval of a Drive-In Window at this location would be injurious to the peace, health, welfare, and safety of the community because the proposed location of the Drive-In Window and the configuration of the building on the site will be blocking the primary source of ingress and egress of this highly traveled entrance; also taking into consideration the clientele that do and will frequent this establishment — the vehicles they drive are trucks, vans, and large vehicles; and finally, the high volume of traffic that the business does and is set up to do makes this hazard highly probable. Conditions that occur as a result of the approval of a Drive-In Window would be injurious and have an adverse impact on the peace, health, welfare, and safety of the community."

On appeal to the Circuit Court for Prince George's County, the appellant argued that, assuming the Board was autho-

rized to preclude the installation of drive-in windows, it never implemented its authority by adopting rules setting forth the standards and guidelines by which it would pass upon the merits of any such requests; that consequently its attempt to regulate drive-in windows on an ad hoc basis was arbitrary and capricious, and a denial of due process of law; that absent enabling legislation, the Board lacked authority to differentiate between counter sales and drive-in window sales of alcoholic beverages; and that the Board has denied it the right to sell alcoholic beverages from a drive-in window, from its already licensed premises, while approving or acquiescing in such sale by other licensees with the same class of license. The appellant maintained that the Board's actions were in excess of its statutory authority, as well as being in violation of rights guaranteed by the State and Federal Constitutions.

The circuit court (Chasanow, J.) held that in the absence of statute or rule the Board could not withhold permission to dispense alcoholic beverages through drive-in windows or to make alterations to licensed premises. The court concluded, however, that under Board Rule 46, the Board could withhold approval of the appellant's application to alter the licensed premises to include a drive-in window, even though the licensing and building permits required by that rule had been obtained. These approvals, the court indicated, were "the minimum requirements for alterations and, that in addition to those requirements, the Board may withhold approval for alterations or additions provided there are standards and reasons for doing so." The court said that such standards were supplied directly or by implication in Board Rule 44, requiring that the Board approve alterations "unless there is a determination that the alterations are not in the best interest of public accommodation, and the need to protect the peace and safety of the community." The court affirmed the Board's decision, finding "sufficient [evidentiary] bases upon which the Board could and obviously did determine that the drive-in window was a danger to the peace and safety of the community." In addition to this general affirmation of the Board's decision, the court more

specifically held that there was substantial evidence concerning traffic in the area from which the Board could determine that the construction of a drive-in window on the licensed premises would be "a danger to the peace and safety of the community." The appellant appealed to the Court of Special Appeals. We granted certiorari before decision by the intermediate court.

## III

As we recently observed in *Brown v. Baer,* 291 Md. 377, 435 A.2d 96 (1981), under § 175 (f) of the Act, the decision of the circuit court on appeal from the Board is final, with no appeal permitted to the appellate courts of this State unless the trial judge decides "a point of law at variance with any decision previously rendered by any other judge of the State on the same question." In the event of such conflict, the appellate court may only decide "the question of law involved" and "shall not pass upon any question of fact." § 175 (f).

The Board maintains that the appeal must be dismissed on jurisdictional grounds under § 175 (f) because no point of law involved in the court's decision in this case is at variance with any prior decision of another judge in the State. Appellant argues to the contrary, citing *R.N. & W. Corporation v. Hartlove, et al.,* Equity #D-7908 (1973), in the Circuit Court for Prince George's County. In that case, plaintiffs were attempting to enjoin the Board from enforcing a rule requiring holders of Class A and B off-sale licenses to close their drive-in windows at 10:00 P.M., instead of 2:00 A.M., as specified by the provisions of Art. 2B governing hours of sale. The circuit court (Powers, J.) held that there could be no differentiation between hours of sale for over-the-counter operations and for drive-in window operations, citing as authority *Meade v. Kerby,* Equity #A-9762 (1956), in the Circuit Court for Prince George's County. *Meade* involved a rule of the Board, which flatly prohibited sales of alcoholic beverages from drive-in windows. The court in *Meade* declared the rule unlawful as being contrary to the statute

which authorized licensees to sell alcoholic beverages from the licensed premises without restriction. The court there concluded that the Board had no authority by rule to discriminate between sales from drive-in windows and over-the-counter sales. After reviewing the holding in *Meade,* Judge Powers said in *Hartlove:*

"That interpretation of the law would still stand, because the legislature had ample opportunity to consider a differentiation between drive-in windows and other types of off-sale liquor establishments and has not seen fit to do so.

"In view of [the decision in *Meade, supra*] and that interpretation of the law, which I construe as being binding on the Court now, and properly so, it would appear to me that any differentiation between hours of one type of off-sale and another would have to be by the legislature and would not be within the power of the Board."

Judge Powers' decision in *Hartlove* was reached in the face of the Board's contention that notwithstanding *Meade,* its rule-making authority was broad enough to permit it to restrict hours of sale from drive-in windows on the ground that this method of dispensing intoxicants impaired the public peace, safety and welfare by fostering sales to minors or inebriated persons. In the course of the *Hartlove* trial, Board counsel referred to what is now § 38 (a) (5) of the Act — the section permitting the Board to regulate alterations or additions to licensed premises — and advised the court that "it has been through the alteration of the licensed premises [rule] that this Board . . . has been attempting to control the sale of alcoholic beverages" through drive-in windows.

The appellant contends that the conflict under § 175 (f) is clear in this case because the earlier decisions held, as a matter of law, that the Board was without authority to discriminate or differentiate between sales of alcoholic beverages pursuant to an off-sale license through a drive-in window upon the licensed premises as opposed to over-the-counter. In the present case, Judge Chasanow

concluded that, as to applications to alter or expand licensed premises under § 38 (a) (5) and Rule 46, the Board was authorized to deny an application to construct and operate a drive-in window. Among the reasons listed by the Board for its decision — reasons not expressly disavowed by the court in affirming the Board's action — were those indicative of a policy determination that drive-in windows as a class pose a greater hazard to the public health and safety than do over-the-counter sales, and that where the public can be accommodated by over-the-counter operations, drive-in windows would not be permitted.

Because we cannot say that the reasons for the lower court's affirmance of the Board's decision in this case did not embrace, in part at least, the policy rationale of the Board disapproved in both *Meade* and *Hartlove,* we think a sufficient conflict exists between the decisions to satisfy the jurisdictional prerequisites of § 175 (f). *See Gianforte v. License Comm'rs,* 190 Md. 492, 58 A.2d 902 (1947). Accordingly, we shall proceed to consider the "question of law" in this case which involves a determination whether the Board, in denying the appellant's application for permission to construct a drive-in window on its already licensed premises, acted lawfully and within its rule-making authority under Rule 46, as held by the lower court.

## IV

It is well settled that when legislative authority is delegated to administrative officials, there must be sufficient standards for the guidance of the administrative officials. *Governor v. Exxon Corp.,* 279 Md. 410, 370 A.2d 1102 (1977) *aff'd* 437 U.S. 117 (1978). The modern tendency of the courts is towards greater liberality in permitting grants of discretion to administrative officials in order to facilitate the administration of the laws as the complexity of governmental and economic conditions increases. *Pressman v. Barnes,* 209 Md. 544, 121 A.2d 816 (1956). Of course, rules and regulations adopted by an administrative agency must be reasonable and consistent with the letter and spirit of the statute under which the agency acts. *Baltimore v. William*

*E. Koons, Inc.,* 270 Md. 231, 310 A.2d 813 (1973); *Comptroller v. Rockhill, Inc.,* 205 Md. 226, 107 A.2d 93 (1954); *John McShain, Inc. v. Comptroller,* 202 Md. 68, 95 A.2d 473 (1953). In a long line of cases, we have upheld broad delegations of legislative power to administrative agencies. *See, e.g., Governor v. Exxon Corp., supra* (statute authorizing the Comptroller of the Treasury to adopt " 'rules or regulations defining the circumstances in which a producer or refiner temporarily may operate a previously dealer-operated station,' " and to permit " 'reasonable exceptions to the divestiture dates,' " *id.* at 415, by which producers or refiners of petroleum products are required to divest themselves of ownership of retail service stations in the State); *Montgomery County v. Walsh,* 274 Md. 502, 523, 336 A.2d 97 (1975) (statute authorizing the County Executive to adopt " 'reasonable and necessary rules and regulations' " for the implementation of the Montgomery County Financial Disclosure Ordinance which required the filing of such financial disclosure statements " 'as might be desirable to promote the trust and confidence of the citizens of the County in the ... County government' "); *Davis v. Montgomery County,* 267 Md. 456, 464, 298 A.2d 178 (1972) (statute authorizing boards of trustees of community colleges to adopt " 'reasonable rules, bylaws or regulations' " to effectuate and carry out the provisions of the statute relating to the establishment and maintenance of community colleges); *McBriety v. Baltimore City,* 219 Md. 223, 238, 148 A.2d 408, 418 (1959) (statute authorizing the building inspection engineer, the commissioner of health, and the chief of the fire department to adopt rules and regulations "proper and necessary" to enforce multiple-family dwelling ordinance for the protection of the public interest); *Givner v. Commissioner of Health,* 207 Md. 184, 188, 113 A.2d 899 (1955) (statute authorizing commissioner of health to adopt rules and regulations "proper and necessary" for the enforcement of a health ordinance pertaining to bathing facilities in dwelling units).

In view of these cases — and the fact that it is manifestly impractical for the legislature to set specific guidelines to

govern the day-to-day exercise of the rule-making power —
we think the broad authority vested in boards of license
commissioners under §§ 1 and 184 (a) of the Act to adopt
reasonable rules and regulations as may be necessary to
effectively administer the law and to foster and promote
temperance in the public interest is both necessary and
constitutional. *See Governor v. Exxon Corp., supra,* 279 Md.
at 441. Similarly, the additional authority lodged in the
Board of License Commissioners for Prince George's County
under § 38 (a) (5) to prescribe rules governing the making
of alterations and additions to, and the use of, licensed prem-
ises is likewise a lawful delegation of authority to an admin-
istrative agency.[2] Rule 46, which implements this statutory
provision, requires building, zoning and other public permits
as a condition precedent to expanding licensed premises, as
well as Board permission to make any alterations or addi-
tions to licensed premises or any change "in the manner in
which alcoholic beverages are dispensed." It is implicit in
the rule, as Judge Chasanow held, that in passing upon the

---

**2.** *See, e.g.,* State v. Parham, 412 P.2d 142, 148 (Okla. 1966) (upholding
validity of statutory authorization to liquor board to promulgate rules " 'to
supervise, inspect, and regulate *every phase* of the business of
manufacturing, importing, exporting, transporting, storing, *selling,
distributing, and possessing* for the purpose of sale, all alcoholic bever-
ages' "); In Re Issuance of Restaurant Liquor License to Tate, 196 Pa. Super.
193, 173 A.2d 657, 660 (1961) (statute upheld which authorized liquor board
to refuse application for liquor license if it found that issuance would be
detrimental to "the welfare, health, peace and morals of the inhabitants of
the neighborhood within a radius of five hundred feet"); Sepe v. Daneker,
76 R.I. 160, 68 A.2d 101, 104 (1949) (approving statute authorizing liquor
board to make "reasonable rules" governing the holding of liquor licenses);
Terry v. Pratt, 258 S.C. 177, 187 S.E.2d 884, 886 (1972) (statute upheld
which authorized Alcoholic Beverage Control Commission to refuse to grant
a retail liquor license if it was of the opinion that the place of business to
be occupied by the applicant was not " 'a suitable place' "); Thacker v. Texas
Alcoholic Beverage Commission, 474 S.W.2d 258, 259 n. 1 (1971) (statute
authorizing refusal of a retail beer license if " '[t]he place or manner in
which applicant . . . may conduct his business is of such nature' " as to be
against the " 'general welfare, health, peace, morals, and safety of the peo-
ple, and . . . the public sense of decency' "); Corral, Inc. v. Wash. State Liquor
Control Bd., 17 Wash. App. 753, 566 P.2d 214, 218 (1977) (statute
authorizing Liquor Control Board to *"make such regulations not
inconsistent with the spirit of this title as are deemed necessary or
advisable")*; *cf.* Carbo, Incorporated v. Meiklejohn, 217 So.2d 159 (Fla. 1969)
(statute requiring a finding that the issuance of a liquor license be " 'in the
interest of the public and the licensee concerned' " held invalid and
unconstitutional because it did not specify standards to be met in
determining what is in the public interest).

merits of a Rule 46 application, the standard governing the Board's determination is whether the proposed change to the licensed premises is in the interest of public accommodation and is consistent with the need to protect the peace, safety and welfare of the community. As broad as this standard may be, we think it comports with due process requirements even though not accompanied by a specific delineation of the elements and factors required to be weighed and considered by the Board in passing upon the application. Obviously, the Board cannot arbitrarily withhold permission to alter or expand licensed premises to include a drive-in window since there is nothing in the Act, or within the Board's rule-making authority, which would permit adoption of a policy per se disfavoring the construction and operation of drive-in windows upon licensed premises. Manifestly, the power delegated to an administrative agency to make rules is not the power to make laws. *Koons, supra,* 270 Md. at 236-37. Consequently, the Board can reject a Rule 46 application only where it is at variance with the public interest and welfare and not in furtherance of the governing provisions of Art. 2B.

Nothing in Board Rule 44 bears on the determination of a Rule 46 application; the former permits the Board to set conditions and impose restrictions only on the granting of new or renewal licenses or upon the transfer of existing licenses. As indicated, however, while Rule 46 permits the Board to take into account a broad range of factors in determining the merits of any application to alter or expand licensed premises, it does not permit the Board to adopt a policy discriminating against drive-in window operations and thereby to deny an application based in any part upon such impermissible policy considerations. We glean from the record in this case, considered in light of the Board's position in the *Meade* and *Hartlove* cases, that the denial of the appellant's application may have been attributable, in some part, to a continuing belief on the Board's part that drive-in windows are inherently detrimental to the public interest and that it is authorized under Rule 46 to prohibit their construction as a matter of Board policy. Therefore, we think

the fair disposition of this case requires a new hearing before the Board, cleansed of any possible notion that it is authorized to deny applications for drive-in windows solely on such policy grounds. At the new hearing, the Board may consider evidence of all relevant factors associated with the merits of a Rule 46 application, including traffic congestion and whether expansion of the appellant's licensed premises to include drive-in windows facilitates unlawful sales to minors or inebriated persons.

> *Judgment of the Circuit Court for Prince George's County vacated; case remanded to that Court with directions that it remand the case to the Board of License Commissioners for Prince George's County for further proceedings consistent with this opinion; costs to abide the result.*