588 A.2d 324

**Joel L. FALIK, et al.**

v.

**PRINCE GEORGE'S HOSPITAL AND
MEDICAL CENTER, et al.**

No. 12, Sept. Term, 1990.

Court of Appeals of Maryland.

April 5, 1991.

Robert C. Bonsib, Greenbelt, for petitioners.

Clifford A. Wilpon, Olney, amicus curiae, for The Greater Washington Orthopaedic Group, P.A.

Linda H. Lamone, Rifkin, Evans, Silver & Lamone, Baltimore, amicus curiae, for Medical and Chirurgical Faculty of Maryland.

Steven E. Schenker, Associate County Atty. (Michael P. Whalen, County Atty., Michael O. Connaughton, Deputy County Atty., on brief), Upper Marlboro, for respondents.

H. Thomas Howell, Rudolph L. Rose, Stan M. Haynes, Semmes, Bowen & Semmes, Baltimore, M. Russell Guy, Thomas Michaels, Robert J. Hallock, Carroll A. Bodie, Stacy Hennessey, amicus curiae, for Bethlehem Steel Corp., C & P Telephone Co. of Maryland, Noxell Corp., The Injured Workers' Ins. Fund and the American Ins. Ass'n.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE and CHASANOW, JJ.

MURPHY, Chief Judge.

This case focuses upon § 37 of the Workmen's Compensation Act, Maryland Code (1985 Repl.Vol., 1990 Cum.Supp.), Art. 101. Subsection (a) provides that the employer of a worker who sustains a job-related compensable injury shall promptly provide necessary medical, surgical and other treatment. Subsection (c) provides, in part:

> "All fees and other charges for such treatment and services shall be subject to regulation by the [Workmen's Compensation] Commission, *and shall be limited to such charges as prevail in the same community for similar treatment of injured persons of a like standard of living.*" (Emphasis supplied.)

Subsection (f) invests "full power" in the Workmen's Compensation Commission "to adopt rules and regulations with respect to furnishing medical, nurse, hospital services, and medicine to injured employees entitled thereto and to the payment therefor."

## I.

Jacqueline Caldwell, having sustained a compensable injury under the Act, sought treatment from Dr. Joel L. Falik, a

licensed physician specializing in neurosurgery with offices in Prince George's County, Maryland. For his services, Dr. Falik billed the employer's insurer for $4,120. In conformity with the *Guide of Medical and Surgical Fees* (the Fee Guide) established by the Commission pursuant to § 37(f) of the Act, the insurer paid only $1,778 of the amount billed by Dr. Falik.

Dr. Falik filed a petition with the Commission for payment of the full amount of his bill. He claimed that the insurer, by its strict adherence to the Fee Guide, acted contrary to the provisions of § 37(c) of the Act. While Dr. Falik acknowledged that the amount received from the insurer for his services was in accordance with the Fee Guide, it was stipulated between the parties that "the fees charged ... were fair and reasonable"; that they were "consistent with the charges then prevailing in the same community for similar treatment of injured persons of a like standard of living"; and that the then prevailing charges in the community where Dr. Falik's services were rendered to Ms. Caldwell "were substantially higher than they were in other communities throughout the state."

The Commission declined to approve Dr. Falik's claim for fees in excess of the Fee Guide, and he appealed to the Circuit Court for Prince George's County. He contended that the Commission erred by automatically applying the Fee Guide, without considering the prevailing charges in the same community where the services were rendered for similarly situated claimants, as required by § 37(c) of the Act. He correctly pointed out that the Fee Guide assigns a certain Relative Unit Value to specific medical procedures and services which, in turn, is multiplied by a dollar figure to obtain the applicable fee. He argued that the Fee Guide made no distinction for cost differentials between one part of the State and another, or as to the differences in similarly situated claimants; that the Fee Guide was never intended to constitute an inflexible rule, mechanically applied, without due consideration to the factors enumerated in

§ 37(c); and that § 37(c) "must be read to mean that the fees and charges for treatment should correspond or are usual, customary and reasonable for like services rendered to like patients in the same or similar communities."

In response, the employer-insurer averred that § 37(f) of the Act empowered the Commission to adopt rules and regulations with respect to medical services and the payment therefor, and that the Fee Guide was adopted pursuant to this authority. They contended that "community," as used in § 37(c), is the entire State; and to the extent of any ambiguity as to the intended meaning of that word, it had been consistently construed by the Commission for many years as a statewide standard. The employer-insurer maintained that nothing in § 37(c) required "that the Commission consider evidence of the fee prevailing for a specific service in the County in which that service is rendered."

The circuit court (McKee, J.) adopted the employer-insurer's position and affirmed the Commission's decision. On appeal, the Court of Special Appeals affirmed the judgment of the circuit court. *Falik v. Prince George's Hosp.*, 80 Md.App. 515, 565 A.2d 118 (1989). It concluded that the Commission had full power to promulgate rules governing fees for medical and surgical treatment and that the provisions of § 37(c) "limiting fees and charges to those that prevail in the same community ... [did not establish] a standard for the Commission to apply on a case-by-case basis." *Id.* at 519, 565 A.2d 118. Rather, the court said, "the limiting language ... [of § 37(c) establishes] a ceiling on the Commission's discretion to establish a schedule of fees and charges." *Id.* It held that the Fee Guide was statewide in application and, while it was intended to be flexible, a variation was not to manifest itself from community to community but only with respect to " 'extraordinary or unusual conditions or complications' " as specified in the General Information Section of the Fee Guide itself. *Id.* While the court recognized from the stipulation of the parties that the fees charged by Dr. Falik were equal to those then prevailing in Prince George's County for the same treatment of injured persons of like standard of

living, it found no evidence of any extraordinary or unusual conditions in this case. *Id.* at 521, 565 A.2d 118.

Dr. Falik thereafter sought certiorari in this Court arguing that, in view of the provisions of § 37(c), it was beyond the authority of the Commission to adopt a Fee Guide of statewide application. We granted the writ to consider the significant issues presented in the case.

II.

■ The Workmen's Compensation Act, adopted by ch. 800 of the Acts of 1914, was designed to protect workers and their families from hardships inflicted by work-related injuries; its coverage included provision for adequate medical care and services. *See Queen v. Agger,* 287 Md. 342, 343, 412 A.2d 733 (1980), and cases there cited. From the time of its adoption to the present day—over seven decades—the wording of what is now § 37(c) and (f) has remained unchanged. In the first Annual Report of the Commission for the year 1914–1915, at 15–16, reference is made to a "fee schedule" governing medical charges; it stated that "the amount allowed for medical attention is limited by the law, and while the fees approved by the Commission may seem small in certain instances, they are based on the prevailing charges in the same community for similar treatment of injured persons of like standard of living." Over the ensuing years, the Fee Guide adopted by the Commission has been revised on numerous occasions to reflect changes in the allowable rates. In its original form, as now, the Fee Guide has been contained in a single document, applicable on a statewide basis, without differentiating between areas or localities within the State. *See, e.g., Twenty–Seventh Annual Report of the State Industrial Accident Commission of Maryland* (1941); *Twenty–Eighth Annual Report* (1942); *Thirty–Seventh Annual Report* (1952).

The 1978 revision of the Fee Guide, which was in effect at the time Dr. Falik rendered services to Ms. Caldwell, stated in its preface that it was a complete revision of the 1970

guide; that it was, as before, "statewide in application"; that "it is recognized that variations from the Fee Guide will occur and it is intended that the Guide be flexible"; and that adjudication "of any variation" is the Commission's responsibility. In its "General Information" section, the Fee Guide stated:

"The Fee Guide is intended to be applicable to average or most frequently encountered situations of the kind specified. However, the Commission may allow an increase or decrease if extraordinary or unusual conditions or complications warrant such action."

The current version of the Fee Guide, adopted by the Commission on August 1, 1987, also provides that it is statewide in application. Thus, from its original enactment in 1914 until the present day, the Commission has interpreted the provisions of § 37(c) and (f) to accommodate a single standard. It has never ascribed to the legislature an intention that the Commission was required by § 37(c) to promulgate a Fee Guide which would reflect differences in medical fees and charges as between counties, municipalities, rural or urban areas, or other localities within the State, or take into account differences as between workers in their standard of living for purposes of fixing allowable fees for each medical or surgical procedure undertaken. On the contrary, the Commission has since 1914 consistently interpreted the provisions of 37(c) as contemplating, for purposes of payments allowable under the Fee Guide, only one statewide "community," as to which it is "limited" to a maximum ceiling or "cap" not to exceed the prevailing rates in that community. Under its interpretation of § 37(c), therefore, the Commission is not required to establish a Fee Guide which mandates payments of rates actually prevailing in the community; rather, its Fee Guide simply cannot exceed those rates.

 Legislative acquiescence in the Commission's longstanding interpretation of § 37(c) and (f) is manifested by its frequent reenactment of these provisions, which gives rise to a strong presumption that the agency's interpreta-

tion is correct. *Sinai Hosp. v. Dep't of Employment,* 309 Md. 28, 46, 522 A.2d 382 (1987); *Wash. Sub. San. Comm'n v. Mitchell & Best,* 303 Md. 544, 559, 495 A.2d 30, 37 (1985). A long-standing administrative interpretation is particularly persuasive, we have said, when the administrative interpretation was established at the same time as the legislative enactment and continued uniformly thereafter. *Balto. Gas & Elec. v. Public Serv. Comm'n,* 305 Md. 145, 161, 501 A.2d 1307 (1986); *Swarthmore Co. v. Kaestner,* 258 Md. 517, 528, 266 A.2d 341 (1970). In a like vein, the consistent construction by an administrative agency responsible for administering a statute, particularly where the administrative interpretation has been made known to the legislature in various annual reports of the agency, as in the present case, is entitled to considerable weight. *National Asphalt v. Prince Geo's Co.,* 292 Md. 75, 80, 437 A.2d 651 (1981).

■ On the other hand, as we said in *Macke Co. v. Comptroller,* 302 Md. 18, 22–23, 485 A.2d 254 (1984), when statutory language is unambiguous, administrative constructions, no matter how well entrenched, are not given weight. In other words, as we stated in *St. Dept. of A. & T. v. Greyhound Comp.,* 271 Md. 575, 589, 320 A.2d 40 (1974), "the unvarying construction of a law by the agency charged with its enforcement over a long period of time . . . cannot override the plain meaning of the statute or extend its provisions beyond the clear import of the language employed."

■ We think § 37(c) is reasonably subject to different interpretations and is therefore ambiguous, in particular, whether it means that the Commission must set differing rates reflective of various geographical areas of Maryland, or whether the statutory language would accommodate a single statewide standard. And we think the undefined term "community," in the context of § 37(c), is patently ambiguous. In view of these ambiguities, the long-standing Commission interpretation of § 37(c), and the legislature's acquiescence in that interpretation, we conclude that the statute authorizes the Commission to promulgate a single

Fee Guide applicable throughout the State, limited to rates which do not exceed, but need not actually correspond to, rates prevailing within the State. Thus, it is of no consequence in this case that the parties stipulated that Dr. Falik's higher charges were consistent with those prevailing in the locality of his practice for similar treatment of injured persons of a like standard of living. We also note that Dr. Falik concedes that his services to Ms. Caldwell were neither unusual or extraordinary, and thus would not have warranted a higher payment under the Commission's discretionary authority to deviate from its Fee Guide in such cases.[1]

### III.

■ Dr. Falik suggests that the grant of "full power" to the Commission to regulate medical and surgical fees is so broad as to constitute an unlawful delegation of legislative authority to an administrative agency. Assuming, without deciding, that Dr. Falik may raise this contention in this case, it is wholly without merit.

■ Manifestly, agency regulations must be reasonable and consistent with the letter and spirit of the law under which the agency acts. *See Dept. of Trans. v. Armacost,* 311 Md. 64, 532 A.2d 1056 (1987); *Baltimore v. Wm. E. Koons, Inc.,* 270 Md. 231, 310 A.2d 813 (1973). In a long line of cases, we have upheld broad delegations of legislative power to administrative agencies, particularly where it is impracticable for the legislature to set specific guidelines to govern the day-to-day exercise of the rule-making power.

---

1. As a result of a recommendation of the Governor's Commission to Study the Workers' Compensation System (January, 1987), § 37(c) was amended by ch. 591 of the Acts of 1987 by adding this provision to its text: "At least once every 2 years, the Commission shall review the allowable fees and other charges for completeness and reasonableness and shall make appropriate revisions to established guidelines." The amendment, in effect, formalizes a procedure which the Commission has periodically pursued over a number of years, namely, conducting studies and public hearings to revise the Fee Guide to bring it into conformity with changing economic conditions.

*See* the cases collected in *Armacost,* 311 Md. at 74, 532 A.2d 1056, and *Sullivan v. Bd. of License Comm'rs,* 293 Md. 113, 122, 442 A.2d 558, 442 A.2d 558 (1982). As we said in *Sullivan,* 293 Md. at 121, 442 A.2d 558, the modern tendency of the courts is toward greater liberality in permitting grants of discretion to administrative officials in order to facilitate the administration of the laws as the complexity of governmental and economic conditions increases. *See, e.g., County Council v. Investors Funding,* 270 Md. 403, 442, 312 A.2d 225 (1973); *Truitt v. Board of Public Works,* 243 Md. 375, 391, 221 A.2d 370 (1966); *Pressman v. Barnes,* 209 Md. 544, 555, 121 A.2d 816 (1956). We conclude that the legislature, in enacting § 37(c), has not run afoul of the general rule (now greatly relaxed) that a statute vesting discretion in administrative officials without fixing any standards for their guidance may, in some circumstances, constitute an unlawful delegation of legislative power. Thus, the Commission acted within its statutory authority in promulgating the Fee Guide challenged in this case.

JUDGMENT AFFIRMED, WITH COSTS.