Dear Honorable William Donald Schaefer
You have asked about the proper interpretation of a provision of the State income tax law that provides a deduction) called a "subtraction modification" in the law) for contributions to the Maryland College Investment Plan ("Investment Plan"), a savings vehicle established under State law for higher education expenses. In particular, you ask about the maximum deduction that a Maryland taxpayer may take with respect to annual contributions to the Investment Plan for a beneficiary.
The relevant statute permits a taxpayer to subtract up to $2,500 from federal adjusted gross income "for each investment account" that the taxpayer establishes under the Investment Plan. The legislative history makes clear that the General Assembly contemplated that this deduction would be limited to $2,500 per year per beneficiary and therefore that all contributions by a taxpayer on behalf of one beneficiary would constitute one "investment account."
Thus, in our opinion, a Maryland taxpayer may take a subtraction modification of up to $2,500 each year for contributions to the Investment Plan on behalf of a particular beneficiary, regardless of whether those contributions are spread among one or more of the portfolios that are part of the Investment Plan. The taxpayer may take a similar deduction for each beneficiary for whom the taxpayer makes contributions.
 I Background A. Maryland College Savings Plans
Like most states, Maryland has created savings programs to help its residents finance the cost of higher education. These programs are designed to conform to the criteria set forth in § 529 of the Internal Revenue Code, 26 U.S.C. § 529. That statute outlines the conditions under which investments in a college savings plan created by a state or educational institution are eligible for federal tax benefits. Plans that satisfy these conditions are often collectively referred to as "529 plans."
The State offers two 529 plans. Both programs offer tax incentives under federal and State law that are unavailable in a typical investment vehicle. The two programs, known collectively as the College Savings Plans of Maryland, are overseen by the Maryland Higher Education Investment Board (the "Board").
The first program, now called the Maryland Prepaid College Trust (the "College Trust[1]"), was established in 1997. Chapters 110, 111, Laws of Maryland 1997, codified in part at Annotated Code of Maryland, Education Article ("ED") § 18-1901 et seq. It offers investment contracts designed to provide a specifically defined future benefit — the cost of tuition — in return for specified current payments to the program. Under this program, parents, grandparents, and others may purchase for the benefit of a child a "prepaid tuition" contract that is designed to cover the future cost of tuition at an eligible educational institution.[2] The cost of the contract depends upon the age of the child — i.e., the amount of time until likely enrollment) and the duration and type of contract selected by the contributor.[3] The individual who buys the contract may pay in a lump sum or in installments. If the child attends a Maryland state institution, the program pays the actual cost of tuition and mandatory fees. If the child attends a private college or an out-of-state institution, the program pays a weighted average of tuition and mandatory fees charged at Maryland public colleges. Either the purchaser of the contract or the beneficiary must be a resident of Maryland or of the District of Columbia when the contract is purchased.
The second program, known as the Maryland College Investment Plan (the "Investment Plan"), was established in 2001. See Chapter 494, Laws of Maryland 2000, codified in part at E.D. § 18-19A-01 et seq. It offers a variety of investment options, much like a mutual fund family, for the purpose of saving for higher education costs. Under the Investment Plan, a contributor may open an investment account for a designated beneficiary.[4] The Investment Plan provides various investment options based on different investment strategies. The Investment Plan is designed so that contributions, and the earnings on those contributions, are ultimately used by the beneficiary for higher education expenses.[5]
In contrast to the College Trust, which strives to provide the cost of public tuition at a Maryland college, or an equivalent sum for attendance at a private or out — of — state institution, the Investment Plan is not designed to cover any specific education expense. Indeed, distributions from the Investment Plan may be used to pay for expenses besides tuition and fees, such as room and board. Also, while the College Trust involves a contract requiring specified payments, the Investment Plan does not require any specific investment.[6] Rather, the contributor elects the amount to invest. In this regard, the Investment Plan is similar to an individual retirement account ("IRA"). A primary advantage of the Investment Plan over a comparable investment in a mutual fund is the opportunity for savings to grow unencumbered by taxes.
B. Tax Benefits for Contributions
Under federal tax law, contributions to a 529 plan grow free of federal income tax. 26 U.S.C. § 529(c).[7] Distributions from a plan are also tax-free to both the contributor and the beneficiary, so long as they are used for educational expenses. Id.; see also Annotated Code of Maryland, Tax-General Article, ("TG") § 10-207(s).
Maryland law provides an additional tax incentive, currently unavailable under federal law. Under the State income tax law, a contributor may claim a deduction) or, more precisely, a "subtraction modification" to federal adjusted gross income[8] ) on his or her State income tax return with respect to contributions to the Maryland plans.
With respect to payments to the College Trust, a taxpayer may deduct up to $2,500 for each prepaid contract. TG § 10-208(n). Payments in excess of $2,500 may be carried over and subtracted from adjusted gross income in subsequent tax years. TG § 10-208(n)(4).
A Maryland taxpayer may take a similar subtraction modification for contributions to the Investment Plan. TG § 10-208(o). The statute specifies that "for each investment account" the deduction is capped at $2,500 per year. Contributions in excess of $2,500 may be carried over and subtracted from adjusted gross income during the following 10 years.
C. Administration of Investment Plan
The Investment Plan is administered by T. Rowe Price Associates, Inc., a large mutual fund adviser headquartered in Baltimore. At the direction of the Board, T. Rowe Price designed 10 "investment portfolios" for the Investment Plan. The portfolios represent different mixes of investments and allow a contributor to select the investment strategy that he or she finds most appropriate. Three of the portfolios are "fixed portfolios," representing a particular mix of assets: Equity Portfolio, Bond Portfolio, and Balanced Portfolio. Seven of the portfolios are "enrollment-based" portfolios, in which the mix of investments is adjusted as the expected date of the beneficiary's enrollment nears.
A contributor may invest in more than one portfolio for a single beneficiary. However, as the plan is currently administered, the contributor must open a separate "account" for each portfolio.[9]
Thus a contributor who desires to invest in several portfolios on behalf of a single beneficiary must open multiple "accounts" for that purpose. Because the State income tax law caps the maximum annual deduction for contributions to an "investment account," this has raised the question of the extent of the tax deduction available under the State income tax law.
For example, suppose a parent with substantial income established an account in each of the 10 portfolios for each of three children, for a total of 30 portfolio accounts. Suppose further that the parent contributed $2,500 to each account) or a total investment of $75,000. May the parent deduct $2,500 from his or her Maryland adjusted gross income with respect to each portfolio account)) a total deduction of $75,000 in a single year? Or is the parent limited to one $2,500 deduction per beneficiary, an annual total deduction of $7,500?
D. Board Interpretation
When the Investment Plan was launched in late 2001, the Board took the position that a contributor could deduct up to $2,500 for each portfolio account. The State Comptroller expressed skepticism about that interpretation of the State income tax law, but agreed to accept the interpretation because contributors had presumably opened accounts with that understanding. The Comptroller believed that it "would have caused chaos" to apply a different interpretation for tax year 2001. The Comptroller promptly advised the presiding officers and relevant committee chairs of the General Assembly of the differing interpretations of the law and urged the Legislature to clarify its intent for subsequent tax years. See Letter of Comptroller William Donald Schaefer to Honorable Thomas V. "Mike" Miller, Jr., and Honorable Barbara Hoffman (December 17, 2001); Letter of Comptroller William Donald Schaefer to Honorable Casper R. Taylor, Honorable Sheila E. Hixson, and Honorable Howard P. Rawlings (December 17, 2001).
E. Failed 2002 Legislation
Legislation was introduced during the 2002 Session of the General Assembly to clarify that a person who contributed to the Investment Plan would be entitled to a maximum deduction of $2,500 annually per beneficiary. Senate Bill 383 (2002); House Bill 437 (2002). Those bills would have amended TG § 10-208(o) to state that the $2,500 cap applied "for each contributor for each designated beneficiary," and would also have clarified other provisions of State law governing college savings plans.[10] In committee, the bills were amended to extend the State tax deduction to contributions made to 529 plans sponsored by other states.
The legislation passed the General Assembly. However, the Governor vetoed the bills. In his veto message, the Governor explained that he believed that the extension of the State income tax deduction to 529 plans of other states would have "an unintended but profoundly adverse impact on Maryland's college savings plans to the ultimate detriment of our citizens." Veto Messages for House Bill 437, Senate Bill 383 (May 15, 2002), p. 2. The Governor indicated that he otherwise supported the original purpose of the legislation to clarify the maximum deduction that a contributor could take with respect to each beneficiary. He stated that the Board's interpretation permitting a $2,500 deduction by one contributor for each of 10 portfolio accounts with respect to a single beneficiary "was clearly not my intent nor that of the General Assembly" in the original legislation creating the Investment Plan. Id., p. 1. The Governor directed the Board to take the necessary administrative steps to clarify the maximum deduction.
Given that the 2002 clarifying legislation was vetoed, you have asked for an interpretation of the State income tax law to resolve whether, under existing law, a contributor's deduction is limited to $2,500 per year for a single beneficiary.
 II Analysis
The Court of Appeals has repeatedly stated that, in construing a statute, the cardinal rule is to ascertain and carry out the intention of the Legislature. While legislative intent is generally divined from the words of the statute, "external manifestations" or "persuasive evidence," including an amendment of a statute, its relationship to earlier and subsequent legislation, and other material that fairly bears on the fundamental issue of legislative purpose, may be considered. See, e.g., Dutta v. State Farm Ins. Co., 363 Md. 540, 549-50, 769 A.2d 948 (2001).
A. Statutory Provisions
Is a parent who spreads a contribution to the Investment Plan on behalf of a child among all 10 portfolios entitled to 10 deductions one with respect to each of the portfolios or just one deduction? The statutory language, on its face, could reasonably be given either reading.
1. Subtraction Modification
The Maryland income tax law provides for various adjustments, including both additions and subtractions, to the taxpayer's federal adjusted gross income to calculate the taxpayer's "Maryland adjusted gross income." See TG § 10l-201 et seq. Among the subtraction modifications is one for contributions to the Investment Plan.
Under TG § 10-208(o)(2), a Maryland taxpayer may subtract "the amount contributed by [the taxpayer] during the taxable year to an investment account" (emphasis added). The deduction is capped for any particular year: "for each investment account, the subtraction . . . may not exceed $2,500 for any taxable year." TG § 10-208
(o)(3) (emphasis added). However, the cap may simply delay rather than deny a tax benefit. "The amount disallowed as a subtraction [as a result of the $2,500 cap] shall be treated as having been contributed in the next 10 succeeding taxable years and, subject to the $2,500 annual limitation for each investment account, may be carried over to succeeding taxable years as a subtraction." TG § 10-208(o)(4). The statute is thus clear that the $2,500 cap applies to "each investment account."
2. Definition of "Investment Account"
The tax law cross-references the definition of "investment account" to the definition of that term in the provisions of the Education Article that create the Investment Plan. TG § 10-208(o)(1). That statute defines "investment account" as follows:
 "Investment account" means an account established by a contributor under this subtitle on behalf of a qualified designated beneficiary for the purpose of applying distributions toward qualified higher education expenses at eligible educational institutions.
ED § 18-19A-01(e). This definition does not indicate whether a contributor may establish more than one "investment account" within the Investment Plan for a particular beneficiary. Nor does it relate the term to the multiple investment options that may be offered as part of the Investment Plan) i.e., whether a contribution placed in several different portfolios for the same beneficiary is considered a single investment account or several investment accounts.
3. Use of "Multiple Investment Portfolios"
Another provision of the law creating the Investment Plan authorizes the division of the Plan into "multiple investment portfolios." E.D. § 18-19A-03(e).[11] That provision also provides that, if multiple portfolios are established with separate accounting and recordkeeping, then the liabilities of a portfolio are enforceable only against that portfolio and not against the Investment Plan generally. But the statute does not explicitly state whether contributions made by a contributor on behalf of one beneficiary but spread among several portfolios should be considered separate "investment accounts." Nor does it implicitly answer that question. The statutory limitation on portfolio liability keyed to separate accounting of the investment portfolios does not dictate that an investment spread among several portfolios be considered multiple "investment accounts." For example, in a similar context, it would not be unusual for an individual to establish a single IRA that consists of investments in several mutual funds that are accounted for separately.
4. Other Statutory Provisions
The Education Article requires that the Investment Plan be administered "in compliance with Internal Revenue Service standards for [529 plans]." E.D. § 18-19A-02(c)(2). However, neither § 529 nor IRS regulations require that a contribution to the Investment Plan for one child that is spread over multiple portfolios necessarily be considered multiple investment accounts. Indeed, for certain regulatory purposes the proposed Treasury regulations under § 529 require aggregation of all "accounts" created by one contributor for a single beneficiary. See Proposed Treasury Reg. § 1.529-3(d).
5. Administrative Construction of Statute
Neither the Board nor the Comptroller has adopted regulations that interpret the statutory term "investment account" in relation to the statutory authorization to include multiple investment portfolios in the Plan. A disclosure statement for the Investment Plan, which the Board provided to contributors, defined "account" as "an account established by an Account Holder for a Beneficiary that is invested in an Investment Option." (emphasis added). The Board thus interpreted the term "account" for purposes of the Plan to relate to a specific investment portfolio a decision that reflected the practice of some other 529 plans.[12]
However, the statutory definition of "investment account" does not itself relate that term to investment portfolios. See E.D. § 18-19A-01(e).
In administering the program, the Board, in practice, has treated an investment spread among multiple portfolios for a single beneficiary as separate accounts. The Board's construction of the law governing the Investment Plan it is charged with overseeing would ordinarily be accorded deference by the courts. See Division of Labor and Industry v. Triangle Contractors, Inc., 366 Md. 407, 416- 17, 784 A.2d 534 (2001). In addition, legislative acquiescence in an administrative construction of a statute often gives rise to a strong presumption that the agency's interpretation is correct. Falik v. Prince George's Hospital Medical Center, 322 Md. 409, 415-16, 588 A.2d 324 (1991). However, an administrative construction is not entitled to deference when it is at odds with the legislative purpose underlying the statute and is not the product of adversarial proceedings or formal rulemaking. Marriott Employees Federal Credit Union v. Motor Vehicle Administration,346 Md. 437, 697 A.2d 455 (1997); Allfirst Bank v. Department of Health and Mental Hygiene,140 Md. App. 334, 780 A.2d 440 (2001).
It is notable that the statute at issue is part of the State income tax law) a law administered and interpreted primarily by the Comptroller. See TG § 2-102(4). While the unique circumstances surrounding the initial launch of the plan in December 2001 prompted the Comptroller to acquiesce in the Board's interpretation of the State income tax law for purposes of tax year 2001, the Comptroller has not formally adopted that interpretation and has publicly expressed his doubts as to whether it is consistent with legislative intent.
Against this background, we turn to the legislative history of the Investment Plan and the related income tax deduction.
B. Legislative History
The legislative history of the Investment Plan reveals that the General Assembly contemplated that a taxpayer's deduction under TG § 10-208(o) would be capped at $2,500 for all contributions made to the Investment Plan on behalf of a single beneficiary.
1. 1997 Creation of College Trust Program
The General Assembly first established a State 529 plan in 1997, when it created the prepaid tuition program, then called the Maryland Higher Education Investment Program and now known as the Maryland Prepaid College Trust. Chapters 110, 111, Laws of Maryland 1997. The program was designed so that its investment earnings, which would ultimately be used to defray the tuition expenses of participants, would grow free of federal income taxes pursuant to § 529 of the Internal Revenue Code. No State income tax incentive was provided at that time with respect to payments to the program.
2. 1998 Deduction for Contributions to College Trust
The following year, the Legislature created a subtraction modification under the State income tax law for contributions to the College Trust as an incentive for individuals to save for college education through the program. Chapter 572, Laws of Maryland 1998. The subtraction modification applied to "advance payments of undergraduate tuition" under the program, but was limited to $2,500 for any taxable year, regardless of the number of contracts the taxpayer purchased. Id., then codified at TG § 10-208(m).
3. 1999 Extension of Deduction to Each Prepaid Contract
Despite the new incentive, the program failed to attract the projected number of investors. In 1999, the General Assembly passed an emergency measure designed to improve the attractiveness and marketability of the program. Chapter 7, Laws of Maryland 1999. The key element of that legislation was an expansion of the deduction for payments to the College Trust. The State income tax law was amended to provide that purchasers of prepaid tuition contracts could deduct up to $2,500 for each contract, and could carry forward payments in excess of $2,500 to deduct in future years.[13]
A representative of the Senate President, the chief sponsor of the bill, testified that this amendment was designed to encourage families with more than one child to invest in contracts by allowing a deduction for each child. Testimony of Steve Ports, Legislative Assistant to Senator Miller, Tape of Hearing of Senate Budget and Taxation Committee on Senate Bill 8 (February 3, 1999). Other proponents of the legislation touted it as "a very important incentive for parents who must pay more than one child's tuition." Letter of Annie K. Kronk on behalf of Johns Hopkins University to Senate Budget and Taxation Committee (February 24, 1999); see also Letter of J. Elizabeth Garraway on behalf of Maryland Independent College and University Association to Senate Budget and Taxation Committee (February 11, 1999) ("This modification will make it possible for families who have the financial burden of paying for the education of more than one child the opportunity to plan effectively and save for those expenses"). Thus, the extension of the deduction to "each contract" was presented as an effort to accommodate families with more than one child.
4. 2000 Creation of Investment Plan Program
In 2000, the Administration proposed the creation of a second 529 plan) the Investment Plan. That legislation included an amendment of the State income tax law to provide a subtraction modification similar to the one provided for prepaid tuition contracts under the State's existing 529 plan. The Governor wrote to the Legislature urging adoption of the new program, which also received the strong support of the Comptroller, a member of the Board. See Letter of Governor Parris Glendening to Honorable Howard P. Rawlings, chairman, House Appropriations Committee (February 9, 2000); Statement of Comptroller in Support of House Bill 11 (February 9, 2000). The General Assembly passed the bill without significant amendment of the tax deduction provision. Chapter 494, Laws of Maryland 2000.
The Fiscal Note described the income tax deduction provided in the bill for contributions to the Investment Plan as follows:
 Contributors may claim an income tax subtraction modification for the contributions made in that taxable year to the plan for each beneficiary. The subtraction may not exceed $2,500 per designated beneficiary for any taxable year. Contributions exceeding $2,500 per year may be carried over for ten years or until the full amount of the contribution has been taken as a subtraction. . . .
Revised Fiscal Note for House Bill 11 (March 27, 2000) at p. 3 (emphasis added). The focus on the amount of deduction per beneficiary appears consistent with the effort during the previous legislative session to modify the deduction for prepaid tuition contracts to ensure that families with multiple children would be able to take a deduction for savings set aside for each child.
The Fiscal Note did not estimate the fiscal impact of the new deduction or the tax exemption of account earnings, but stated that the reduction in State revenues would depend on "the number of accounts purchased, the dollar amounts of contributions, amounts refunded, effective tax rates, the ages of beneficiaries and plan performance." Id. at p. 8. Notably, the Fiscal Note did not include the number of portfolios as a factor in the fiscal impact of the deduction or suggest that a purchaser could open multiple accounts for a single beneficiary. Thus, a legislator who relied on the Fiscal Note to assess the fiscal impact of the legislation would have understood that a taxpayer would be limited to a $2,500 deduction per beneficiary.
The Fiscal Note did not appear to be inconsistent with a position paper submitted by the Board to the General Assembly in support of the bill. The position paper stated that participants in the savings plan would benefit from "the same tax deductions currently enjoyed by participants in the [Prepaid College Trust]." Testimony in Support of House Bill 11, Maryland Prepaid College Trust and Maryland College Investment Plan at p. 4. The position paper did not indicate that an investment in multiple portfolios for a single beneficiary would be regarded as multiple accounts entitled to separate deductions.
C. Summary
The State tax law limits the annual deduction for contributions to the Investment Plan to $2,500 for each "investment account," but does not indicate whether an investment account is restricted to one investment portfolio or may contain multiple portfolios. Neither the tax law nor the Education Article clearly states whether a taxpayer may create multiple investment accounts for a single beneficiary.
The legislative history of the State's 529 plans makes clear that the General Assembly was concerned that the deduction be available for each child in a family with multiple children. The Fiscal Note for the bill that established the Investment Plan reveals an understanding that a contributor's subtraction modification would be limited to $2,500 annually for each beneficiary. While a taxpayer could claim deductions for multiple beneficiaries, the amount of the annual deduction with respect to each beneficiary would be measured against the total contribution made by the taxpayer for that beneficiary in that year. Thus, the Legislature contemplated that a contribution by a taxpayer to the Investment Plan on behalf of one beneficiary would be treated as one "investment account," subject to the annual $2,500 deduction cap, regardless of whether that contribution was placed in one or several investment portfolios.[14] Undoubtedly, the statute could have expressed this intent more clearly.[15] But there is no indication in either the statutory text or the legislative history that the Legislature was giving the Board discretion to fashion a deduction of significant and uncertain fiscal effect.[16] Cf. 71 Opinions of the Attorney General 350, 358 (1986) (agency's expansive interpretation of statutory phrase "each separate account" in savings and loan insurance statute at odds with Legislature's intent to limit liability).
This conclusion is confirmed by the recent and unanimous statements of the Governor who proposed and supported the 2000 legislation establishing the Investment Plan, Board members such as the Comptroller who endorsed that legislation, and the members of the legislative committee that favorably reported it to the General Assembly. While these subsequent expressions of prior intent are not controlling,[17] they confirm the contemporary legislative history.
 III Conclusion
In our opinion, a Maryland taxpayer may take a subtraction modification of up to $2,500 each year for contributions to the Investment Plan on behalf of a particular beneficiary. Those contributions may be made to one or more portfolios that are part of the Plan. The taxpayer may take a similar deduction for each beneficiary for which the taxpayer made contributions to the Investment Plan.
To resolve any uncertainty about this conclusion, the Comptroller and the Board should adopt regulations that further clarify the application of this provision of the State income tax law to accounts established under the Investment Plan. The General Assembly should also consider amending the statute to confirm the intent expressed in the legislative history of the Investment Plan.
J. Joseph Curran, Jr.
Attorney General
Robert N. McDonald Chief Counsel Opinions Advice
[1] The program was previously called the Maryland Higher Education Investment Program.
[2] "Eligible educational institution" is defined as one that offers an associate, bachelor, or graduate degree program and is eligible to participate in federal financial aid programs. E.D. § 18-1901(d).
[3] The program includes several types of contracts designed to cover university tuition, community college tuition, or a combination of both. E.D. § 18-1909. As designed by the Board, a contract to pay university tuition may cover from one to five years of tuition. See COMAR14.15.01.03 (Article II, § 6) (applicable to contracts established in 1998 and 1999).
[4] The statute incorporates by reference the definition of "designated beneficiary" in § 529, which defines the term as "the individual designated at the commencement of participation in the qualified tuition program as the beneficiary of amounts paid (or to be paid) to the program." See E.D. § 18-19A-01 (f); 26 U.S.C. § 529(e)(1)(A). Unlike the College Trust, there is no residency requirement for either the contributor or the beneficiary. E.D. §§ 18-19A-01(c), (f); 18-19A-04(a).
[5] There are adverse tax consequences under both State and federal law if funds are withdrawn from the Investment Plan without being spent on educational expenses. See 26 U.S.C. § 529(c)(3)(A), (c)(6); Annotated Code of Maryland, Tax-General Article, §§ 10-205(h),10-207(s)(3).
[6] The Board has established a minimum amount for an initial contribution to the Investment Plan ($250), but will waive that requirement if the contributor arranges for automatic monthly contributions directly from a bank account or through payroll deduction.
[7] Prior to 2001, federal law deferred taxes on earnings until distributions were made from a 529 plan; the earnings would then be taxed at the student's rate. The Economic Growth and Tax Relief Reconciliation Act of 2001, Pub.L. 107-16, Title IV, § 402, 115 Stat. 38, 60-63 (June 7, 2001), amended the federal tax law to exempt amounts earned in a 529 plan from the federal income tax upon distribution. In adding this federal tax incentive, Congress "greatly enhanced the attractiveness of 529 plans." Department of Legislative Services, Income Tax Issues Relating to the College Savings Plans of Maryland (January 18, 2002) at p. 1.
[8] In this letter the terms "subtraction modification" and "deduction" are used interchangeably.
[9] In requiring a separate "account" for each portfolio, the Board followed the practice of the Virginia 529 plans. See Virginia Education Savings Trust Enrollment Kit at p. 16 (January 1, 2002). This practice was apparently adopted to allow contributors some flexibility to select multiple investment options for a beneficiary while ensuring compliance with a requirement of § 529 that the contributor "not directly or indirectly direct the investment of any contributions."26 U.S.C. § 529(b)(4). Proposed IRS regulations interpreting this requirement stated that a person establishing an account could select among different investment options only when the account was initially established. Prop. Treas. Reg. § 1.529-2(g); see 63 Fed. Reg. 45019
(August 24, 1998).
The proposed IRS regulation posed a potential dilemma in a typical scenario involving an account opened for the benefit of a very young child. An initial contribution to a 529 plan for that child might appropriately be placed in an aggressive equity portfolio. An additional contribution made years later, when the child was closer to college age, might appropriately be placed in a more conservative investment option. To accommodate a contributor in these circumstances without running afoul of § 529's prohibition against active direction of an account, some 529 plans required separate accounts for separate portfolios.
In apparent recognition of this situation, the IRS amended its proposed regulations concerning 529 plans to permit contributors to change an investment option within an account once each year. IRS Notice 2001-55 (September 24, 2001). Thus, the factor that inspired the use of separate accounts for separate investment options in some 529 plans is no longer as compelling, although the record — keeping and software of those 529 plans remains designed to treat investments in separate investment options as separate "accounts."
[10] The bills would have permitted each spouse on a jointly — filed return to claim the deduction separately. In addition, the bills would have clarified the tax treatment of funds "rolled over" between one of Maryland's 529 plans and a 529 plan sponsored by another state.
[11] The statute reads:
(1) The Plan:
 (i) Shall be established in the form determined by the Board; and
(ii) May be established as a trust to be declared by the Board.
(2) The Plan may be divided into multiple investment portfolios.
 (3) If the Plan is divided into multiple portfolios as provided in paragraph (2) of this subsection, the debts, liabilities, obligations, and expenses incurred, contracted for, or otherwise existing with respect to a particular portfolio shall be enforceable against the assets of that portfolio only and not against the assets of the Plan generally, if:
(i) Distinct records are maintained for each portfolio; and
 (ii) The assets associated with each portfolio are accounted for separately from the other assets of the Plan.
ED § 18-9A-03(e).
[12] See p. 5 and note 9 above.
[13] Before the carryover provision was added to the law, purchasers who paid a lump sum could take only a single $2,500 deduction for the year of the lump sum payment. By contrast, a purchaser who paid in installments could take deductions for each year in which contributions were made. The carryover provision was designed to remove this disincentive for lump sum payments. See Floor Report on Senate Bill 8 (February 16, 1999).
[14] The Board's interpretation was supported by a letter of advice from the Board's counsel. In a memorandum construing the State income tax law to permit a contributor to take multiple $2,500 deductions with respect to a single beneficiary, the Board's counsel argued that the "plain meaning" of the income tax law demonstrated a legislative intent to permit multiple deductions despite the contrary statement in the Fiscal Note. That memorandum also relied on an analogy to the allowance for a separate deduction for each contract in the State's other 529 plan, the College Trust. See Memorandum of Assistant Attorney General Mary Anne Busse O'Donnell to Maryland Higher Education Investment Program Board (January 17, 2002). That construction was apparently consistent with the administration of Virginia 529 Plan. See Maryland Prepaid College Trust, Testimony (January 18, 2002). However, as noted above, the statute does not "plainly" dictate that a contribution for a single beneficiary spread over multiple portfolios necessarily constitutes one account for each portfolio or even that each such "account" is an "investment account" for purposes of § 10-208 (o) of the State income tax law.
[15] For example, the bills passed by the Legislature in 2002 would have amended TG § 10-208 (o)(2) to state that "for each contributor for each designated beneficiary, the [deduction] may not exceed $2,500 for any taxable year." House Bill 437 (2002); Senate Bill 383 (2002).
[16] A study prepared by the Board for the 2002 legislative session indicated that approximately 30% of the contributors to the Investment Plan invested in multiple portfolios for a single beneficiary. Testimony of Maryland Higher Education Investment Board and Maryland Prepaid College Trust (January 18, 2002), Attachment B. The study also indicated that a total of approximately $69,000,000 in contributions could be claimed as deductions if the law permitted a $2,500 deduction for each of multiple portfolios. By contrast, a total of $33,700,000 would be eligible for deduction if the cap applied to all contributions by a taxpayer on behalf of a single beneficiary. Id. Attachments C — D. Of course, even under the latter construction of the law, the carryover provisions in the State income tax law would permit contributors to deduct some of the excess contributions in subsequent years. See TG § 10-208 TAX-GEN.(o)(4). 
[17] See Kelly v. Marylanders for Sports Sanity, 310 Md. 437, 471
n. 18, 530 A.2d 245 (1987); 2A Singer, Sutherland Statutory Construction (2000 rev.) §§ 48.16, 48.17.
 *Page 154