639 A.2d 685

CONTROLLER, ANNE ARUNDEL COUNTY

v.

PLEASURE COVE YACHT CLUB, INC.

No. 17, Sept. Term, 1993.

Court of Appeals of Maryland.

April 14, 1994.

Kurt J. Fischer, Roger D. Redden (Roger D. Redden, Kurt J. Fischer, Piper & Marbury, all on brief), Baltimore, Judson P. Garrett, Jr., County Atty., on brief, Annapolis, for petitioner.

Robert J. Fuoco, Glen Burnie, for respondent.

Argued before MURPHY, C.J., ELDRIDGE, RODOWSKY, McAULIFFE,* CHASANOW, KARWACKI and BELL, JJ.

ELDRIDGE, Judge.

The dispositive issue in this case concerns the scope of Maryland Code (1957, 1990 Repl.Vol.), Art. 24, § 9–602, authorizing Anne Arundel County to tax "space rentals."

---

* McAuliffe, J. now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

## I.

Ch. 302 of the Acts of 1971 provided that "[t]he County Council for Anne Arundel is hereby empowered and authorized, by ordinance, enacted from time to time pursuant to its legislative procedure, to levy, impose, and collect a sales or use tax upon ... space rentals." Although the statute has been amended several times, the pertinent part has remained essentially unchanged. In its present form, the statute provides that "Anne Arundel County may impose, by ordinance, and collect a sales or use tax on ... space rentals." Art. 24, § 9–602(a). Pursuant to this authorization, the County enacted Article 6, § 7–405(b), of the Anne Arundel County Code levying

> "a tax of 10% of any charges or other consideration paid or received in exchange for the use of services or facilities for the purpose of docking or storing boats, including marina or boat slip facilities, space rentals, and docking and storage areas. If the services or facilities are offered in conjunction with other services or facilities, the tax applies only to the portion of consideration derived from space rental, docking, or storage."

The tax is usually referred to as the "boat slip tax." The county ordinance also requires that any person offering "services or facilities for the storage or docking of boats shall collect the tax from the user of the services or facilities, file a return, and remit the tax directly to the collecting authority." Anne Arundel County Code, Article 6, § 7–405(c)(1).

The Anne Arundel County Controller promulgated regulations to assist in the administration of the boat slip tax levied by § 7–405(b). Specifically, section IIA of the regulations explains:

> "The rate of tax is 10% and is effective July 1, 1975. The tax is levied on money received for space rental, docking or storage. In the event that there are other charges, i.e., charges for crane rental, hauling or the like, included with the charge for space rent, storage or docking, such amounts are to be *excluded* from the taxable amount and the bill for

the charge must indicate the proportionate amount charged for each specific service."

In addition, the Sales Tax Division of the Controller's Office issued internal guidelines related to the administration of the boat slip tax. The guidelines were drafted by a county attorney who was apparently assigned to the Sales Tax Division. These guidelines provide in part:

"In the case of 'boatel' storage .... [a]s to when a crane is in actual use in lifting a given customer's boat in and out of storage, this service, only if separately invoiced, may be charged to a given customer as a separate non-taxable service."

## II.

Pleasure Cove Yacht Club, Inc., is an Anne Arundel County Yacht Club which, in exchange for annual dues, grants members the use of its swimming pool, tennis courts, picnic area, and clubhouse. Pleasure Cove also operates a marina and rents wet slips, outside storage racks, and boatel spaces to yacht club members only.[1] Before 1989, members seeking to rent a slip, outside storage rack, or boatel space would enter a rental contract with the marina to pay, in addition to membership dues, a rental fee for the slip or space. The entire rental fee was subject to the boat slip tax, even though the amount paid included the cost of marina services. Among the marina services covered by the rental fee were forklift services,[2] ice

---

**1.** A boatel is a building containing multi-tiered racks on which the boats are stored. A forklift is used to retrieve boats from the storage units.

**2.** Members are not permitted to use the forklift themselves but must request the assistance of the yacht club staff. Payment of the necessary fees entitles members to unlimited use of the forklift. Generally, the fees are assessed without regard to the frequency of use. An exception exists if a member rents a boatel space or outside rack strictly for storage and does not intend to use the boat during the course of the rental period. In this case, the manager, in his discretion, may reduce the cost of marina services or eliminate the fee altogether.

eater,[3] electricity, trash removal, assistance to members getting on and off the boats, assistance with canvassing boats, boat cleaning services, security, snow removal, and periodic checking of bilge pumps.

After being told by other managers that marina services were not taxable, Ed Sealing, Pleasure Cove's general manager, revised the manner in which members were charged under the rental contracts. In the 1989 rental agreements, Pleasure Cove reduced by one-half the previous cost of the space rental and charged members separately for marina services, usually in the amount of the abated rental fee.[4] Pleasure Cove only applied the boat slip tax to the reduced amount separately stated for the space rental.

Pleasure Cove then requested a $10,000 refund from the County for overpayment of the boat tax for the years prior to 1989. This request precipitated an audit by the County. While examining Pleasure Cove's records, Tracy Cabral, an auditor with the Sales Tax Division of the County Controller's office, noticed the difference between the tax amount collected on the space rentals in 1988 and the amount collected in 1989. She also discovered that the 1989 rental contracts contained a new charge for marina services to which the boat sales tax had not been applied. After receiving what she regarded as an unsatisfactory explanation of the marina services charge, Ms. Cabral concluded that the cost of marina services should have been subject to the county boat slip tax. Pleasure Cove was

---

3. The ice eater is an electrically driven propeller placed underwater to drive the warmer bottom waters to the surface. This action, coupled with the constant circulation of the water, helps prevent freezing and damage to the boats.

4. For example, a boatel rental contract in 1988 might have included a $500 charge for membership dues, a $1,000 charge for the rental space, and a 10% tax on the cost of the rental space. In 1989, the same contract would have included a $550 membership fee (reflecting an increase in dues from the previous year); the rental space, however, would be billed at $500 and a new marina services charge would also cost $500. The boat slip tax would be applied only to the $500 space rental.

assessed $7,736.16 for the tax deficiency and $773.62 in penalties.

Pleasure Cove requested a review of the assessment by the Maryland Tax Court. At the Tax Court hearing, Mr. Sealing testified as to the services that were provided for by the marina service fee. He also testified that the need for certain services depended on whether the rental was for a slip or a boatel. He explained that, although the slip renters are permitted to store their boats temporarily in a boatel space and may make use of the forklift to do so, the forklift is primarily used by boatel renters to remove their boats from the space and to return the boats to the boatel. Slip renters, on the other hand, make primary use of the ice eater because their boats remain in the water throughout the winter. Mr. Sealing further testified that, unless a renter intended to store his boat for the year without making use of it, every renter would pay some amount for marina services. He explained that there was no set formula for determining the marina services fee,[5] but that the cost of the space rental generally equalled the cost of marina services. According to Mr. Sealing,

> "[t]he amount of the service is corresponding, in most cases, to the length of the vessel that we are handling.... Different length vessels require special handling, strain upon the equipment. Larger vessels, heavier vessels produce more strain, more wear and tear on the equipment and the operators. Some vessels even require multiple operators, where you have people on the ground we call spotting the vessel at both ends of it, while the equipment operator is moving it."

Since members with larger boats typically were charged higher rental fees, a comparable charge for marina services would

---

5. On cross examination, Mr. Sealing admitted that, in a deposition, he had previously answered "no" when asked, "[i]s the amount charged customers for other marina services in any way related to the cost of providing those services?"

take into account the greater wear and tear on equipment caused by rendering services for the larger boats.

Frederick Mershon, a marina owner, testified as to the rental practices at the two county marinas with which he is associated. He explained that, like Pleasure Cove, London Towne Marina rents slips, boatel spaces, and outside storage racks. In 1989, according to Mr. Mershon, the marina charged $180 per year for a boatel rental, $60 per year for an outside rack, and $1,232 for "in and out service" or handling the boat.[6] The tax was collected only for the $180 boatel space or the $60 outside rack. Mr. Mershon also disclosed that London Towne Marina had been audited in the past by Ms. Cabral and that no objections had been raised as to how London Towne applied the boat slip tax. As to Holiday Point Marina, which rents wet slips only, Mr. Mershon testified that slip rental customers were not, and are not, separately charged for the limited services offered by that marina.

Ms. Cabral testified that a typical marina in Anne Arundel County charges for the rental space and includes the services as part of that charge. She further stated that if London Towne were charging for the space rental and services in the manner testified to by Mr. Mershon, then it was not complying with the requirements of the county boat slip tax. On cross examination she admitted that Pasadena Boatel, another county marina which Ms. Cabral had audited, treats some of

---

6. When asked how the amount for the space rental was computed, Mr. Mershon replied:

"When ... Anne Arundel County first imposed the tax for the slip tax, I went to the county offices of the Controller. I can't tell you who I met with at the time, but I had prepared ... documents on the cost of the boatel to build, what the cost would be to operate it, what would the overhead be, and what would be a reasonable profit for this.

"And the county and I, at that time, agreed that fifteen dollars a month, or [one] hundred and eighty dollars a year would be a satisfactory charge for the rent. And the balance would be for the cost of handling the boat."

Mr. Mershon also explained that the service charge was simply an amount that fell "[s]omewhere between a happy medium of what we felt we could get for the rental and what we absolutely needed in order to exist as an operating entity."

its marina services as non-taxable items. According to Ms. Cabral's testimony, she relied upon § 7-405(b) and the administrative regulations in calculating the boat slip tax. She admitted that she was familiar with the Sales Tax Division's guidelines drafted by a county attorney and that they did not contradict county policy. She also maintained that the county no longer relies upon them. There was, however, some evidence indicating that Ms. Cabral may have relied upon the guidelines in auditing Pleasure Cove.[7]

The Tax Court affirmed the County assessment but vacated the penalty that had been imposed. In its opinion, the Tax Court first appeared to say that, if the cost of hauling a boat to and from storage and other services were separately charged, the services would be non-taxable. The court explained:

"It's the Court's opinion that really what the ordinance is talking about, as far as the exclusions go, is that if it costs you X numbers a year for a ... boatel ..., and then they say in addition to that we charge you a hundred dollars to put your boat ... in in the spring and a hundred dollars to pull it out in the fall, so it's really going to cost you X dollars plus the two hundred for the in and out, then this Court feels that this is what the language of that ordinance is addressing; is that when that kind of charge is made, then you shouldn't impose the tax on that.

"And again the law says that it has to be broken out. So you would really have a space rental, and a cost of hauling and putting the boat back in and out."

---

**7.** Ms. Cabral testified that she had concluded that the charge for marina services, which Mr. Sealing had told her was for electricity, was taxable, because the electricity was not separately metered. Neither § 7-405(b) nor the regulations address the taxability of electricity; the guidelines, however, state that

"... your records and billings should not separately itemize those 'support services' which are incidental to the boat slip or storage rental service as separate 'non-taxable' services. Examples of such 'support services' include but are not limited to ... [c]harges for electricity not separately metered by the utility company for each individual slip."

Later the Tax Court referred to Pleasure Cove's change in practices and stated, somewhat inconsistently, that, even with the separate charge for marina services, this case would be governed by *Baltimore Country Club v. Comptroller*, 272 Md. 65, 321 A.2d 308 (1974). According to the Tax Court,

> "we do feel that the *[Baltimore Country Club]* case ... is very close to the situation we have here; where ... it was some type of business organization, that they were charging for the food and then there was a fifteen percent service charge put on top of it. And they were saying that that should not be taxable, and the appeals court said yes that it would be taxable."

Finally, the Tax Court criticized the County for its inconsistent administration of the tax:

> "So it's a circumstance here where this Court truly believes that ... Anne Arundel County is primarily responsible for the pickle that this taxpayer finds himself in at this particular point.
>
> \*      \*      \*      \*      \*      \*
>
> "But this really looks to me like a situation where Anne Arundel County, although they can charge this tax in the manner that they have already, and which this Court is affirming, but under the circumstances with a lack of a consistent pattern of collecting this tax from these various marinas over the years, and in light of the fact that Pleasure Cove is in a position now where apparently they will not only have '89, but '90 and even '91 to deal with as far as this deficiency goes, it may be a good time to say you know what, we may have led these people down the wrong road with some of the things that we have been doing."

The Tax Court stated in its Order that the amounts charged by Pleasure Cove for marina services "constitute taxable consideration paid or received in exchange for the use of services or facilities for the purpose of storing and docking boats under § 7–405(b) of the Anne Arundel County Code. . . ."

Pleasure Cove sought review of the agency decision in the Circuit Court for Anne Arundel County. The circuit court, treating the issue as entirely one of statutory construction, reversed based upon its interpretation of § 7–405(b). The circuit court held that, under the plain meaning of the county ordinance, forklift and other marina services were not taxable. The circuit court analyzed the ordinance as follows:

"[T]his Court finds the statutory language of § 7–405 to unambiguously state which services or facilities are taxable under § 7–405. This finding is best understood by reading each clause of § 7–405 independently.

"The first clause of the first sentence reads 'There is a tax . . . for the use of services or facilities. . . .' This clause standing alone is somewhat ambiguous. However, the second clause of the first sentence, modifying the first clause, describes what 'services or facilities' are taxable. Taxable 'services or facilities' are those which are used '. . . for the purpose of docking and storing boats. . . .' From a plain reading of these two clauses this Court finds the clear intention of the County Council by enacting the Boat Tax was to tax only those services or facilities which are used for the purpose of docking and storing of boats.

"Nevertheless, there may be confusion over whether forklift services are 'used for the purpose of docking and storing boats.' However, any confusion in this regard is removed by the third clause of the first sentence which itemizes the types of 'services or facilities' which are used for 'the purpose of docking and storing boats' and thus taxable under the Boat Tax. According to the statute these items include '. . . marina or boat slip facilities, space rentals, and docking and storage areas.' This Court does not find in this first sentence a reasonable interpretation which would include fork-lift services as a taxable item.

"This Court has applied the same analysis to the second sentence of the Boat Tax and in doing so does not find a reasonable interpretation which would include fork-lift services as a taxable service. The first clause of this sentence reads 'If the services or facilities are offered in conjunction

with other services or facilities, . . . .' This Court interprets this clause as referring to the services or facilities which are delineated in the first sentence, i.e. marina or boat slip facilities, space rentals, and docking and storage areas. Additionally, this clause sets up the conditional situation when these particular services are commingled with other services. This leads us to the second clause of the second sentence which explains, 'the tax applies only to the portion of consideration derived from space rental, docking, or storage.' Again a plain reading of this clause does not include fork-lift services as an item which must be separated as a taxable item."

Anne Arundel County appealed to the Court of Special Appeals. Before the case was heard by the Court of Special Appeals, Pleasure Cove filed in this Court a petition for a writ of certiorari which we granted.

## III.

■  Pleasure Cove in its petition and brief argues that the circuit court correctly interpreted the county ordinance. Alternatively, Pleasure Cove argues that, "if the county boat slip tax does apply to services, Anne Arundel County has exceeded its authority under state law" by imposing the boat slip tax on marina services. In addition, Pleasure Cove complains about certain evidentiary rulings by the Tax Court.

The County argues that § 7–405(b) of the Anne Arundel County Code permits the County to tax marina services and that the ordinance is within the authority delegated to the County by the State statute, Art. 24, § 9–602. Specifically, the County argues that, because the marina services are a mandatory, integral part of the space rental, they are subject to the boat slip tax.[8]  Like the Tax Court, the County primari-

---

8.  It was not established in this case that the marina services charge was mandatory. Although Mr. Sealing testified that most people pay some amount for marina services, he also stated that the charge for services could be reduced or waived if a member were not going to use some or

ly relies upon *Baltimore Country Club v. Comptroller, supra,* 272 Md. 65, 321 A.2d 308, to support its position. The County further argues that the Tax Court properly applied the correct legal principles, and that its decision was supported by substantial evidence.

In our view, when the General Assembly in Art. 24, § 9–602, authorized Anne Arundel County to levy a tax on "space rentals," it did not authorize the County to levy a tax on other marina services, such as involved in this case, when the charge for the space rental, reasonably reflecting the space rental, is set forth separately from the charge for the other marina services. Consequently, we do not reach the other challenges to the Tax Court's decision which have been made by Pleasure Cove.

As indicated above, the thrust of the County's statutory construction argument, with respect to both the state enabling statute and the county ordinance, is that the tax in question, being a sales tax,

> "is imposed on the purchase price and reaches all charges required to be paid as a constituent or bundled part of the price, including services that must be purchased as a part of the sale. *Baltimore Country Club v. Comptroller,* 272 Md. 65, 73 [321 A.2d 308] (1974); *see Hooks v. Comptroller,* 265 Md. 380, 386–387 [289 A.2d 332] (1972)." (Reply Brief of Appellant at 11).

The *Baltimore Country Club* case was also the basis for the Tax Court's decision in the present case. In our view, neither *Baltimore Country Club,* nor *Hooks v. Comptroller,* 265 Md. 380, 289 A.2d 332 (1972), also cited by the County, supports the Tax Court's decision.

Preliminarily, as noted previously, the Tax Court made no factual finding that the full marina services charge was mandatory. Moreover, the evidence would not have supported such a finding if it had been made. This factor itself removes

---

all of the services during the rental period. The Tax Court made no finding with regard to the matter.

the instant case from the principle applied in *Baltimore Country Club v. Comptroller, supra.* Furthermore, even if we assume *arguendo* that the full marina services charge was mandatory for all of those members renting boat slips, outside racks, or boatel spaces, the *Baltimore Country Club* and *Hooks* cases are distinguishable.

In both *Baltimore Country Club* and *Hooks* this Court interpreted the "price" of a retail sale under the Maryland Retail Sales Tax Act, Maryland Code (1957, 1969 Repl.Vol.), Art. 81, § 324 *et seq.*, to include certain mandatory expenditures integrally connected with a purchase or rental. This Court held in *Baltimore Country Club* that because the service of food and beverages was an integral part of the sale of restaurant food, and because a service charge was mandatorily imposed by the club, the service charge was a taxable part of the price of the food and beverages. 272 Md. at 73–74, 321 A.2d at 312–313. In *Hooks, supra,* the Court held that the taxable price of a taxicab rental included amounts contractually required to be paid to the lessor for gasoline, even though the purchase of gasoline, by itself, would not have been subject to the sales tax. 265 Md. at 386–387, 289 A.2d at 335.

The services in *Baltimore Country Club* and *Hooks* were quite different from the marina services at issue in the present case. With regard to the *Baltimore Country Club* case, restaurant service is inherently necessary to the sale of restaurant meals and is usually not optional.[9] Thus, the price of a meal typically reflects the cost to the restaurant of serving the meal. When, in addition to the price of the meal, a restaurant requires a customer to pay a fixed-percentage gratuity, it is simply charging a higher amount for the service aspect of the meal. As we explained in *Baltimore Country Club,* 272 Md. at 73, 321 A.2d at 313, quoting *Youngstown Club v. Porterfield,* 21 Ohio St.2d 83, 86, 255 N.E.2d 262, 264 (1970),

---

**9.** For practical reasons, restaurants do not permit customers to retrieve and assemble the various parts of their meals from the kitchen after the food has been cooked or otherwise prepared.

" '[t]he Club is furnishing and serving food and drinks, and its billing to members includes the [mandatory] service charge. The fact that the service charge is somewhat segregated from the charge for food and drinks, and will eventually pass to the waiters, does not make the labor cost any different from the amount for fixed labor costs which are included in the price for food and drinks.' "

Since the mandatory gratuity was, in essence, part of the cost of the meal, it was held to be subject to the retail sales tax.[10]

The marina services involved here, on the other hand, are not inherently necessary to the wet slip, outside rack, or boatel rental. Boat slip renters are capable of performing the marina services on their own and quite often do. Checking bilge pumps, breaking up ice around boats, cleaning and canvassing boats, etc., are all activities performable without the assistance of the marina staff. Likewise, members do not necessarily require a marina forklift to get their boats into and out of the water. There is nothing in the record to suggest that a renter may not use his or her own boat trailer or other means for that purpose. Unlike the restaurant service in *Baltimore Country Club* and the gasoline in *Hooks,* the marina services involved here are not intrinsically necessary to the space rental.

Moreover, the tax at issue in this case is not a general retail sales tax like that involved in *Baltimore Country Club* and *Hooks.* Instead, it is a sales tax applied to a very specific item—a space rental. In addition, neither *Baltimore Country Club* nor *Hooks* involved the delegation of taxing power to a county. As subdivisions of the State, counties do not have inherent taxing authority; their power to tax depends upon the grant of authority from the State.

---

**10.** We note that, since our decision in *Baltimore Country Club,* the General Assembly has excluded "a mandatory gratuity or service charge in the nature of a tip for serving food or beverage to a group of 10 or fewer individuals for consumption on the premises of the vendor" from the definition of taxable price. Maryland Code (1988, 1993 Cum.Supp.), § 11–101(i) of the Tax–General Article.

*Eastern Diversified v. Montgomery Cty.,* 319 Md. 45, 49, 570 A.2d 850, 852 (1990); *Schneider v. Lansdale,* 191 Md. 317, 324–325, 61 A.2d 671, 674 (1948); 2A Antieau, *Local Government Law* § 21.00 (1990); 4 Sands & Libonati, *Local Government Law,* § 23.02 (1993). Courts strictly construe the delegation of taxing power to a county. 2A Antieau, *supra,* § 21.02. This Court has generally observed that (*Fair Lanes v. Comptroller,* 239 Md. 157, 162, 210 A.2d 821, 823 (1965))

> "[i]n interpreting tax statutes [we] must not extend their provisions by implications beyond the clear import of the language employed and where there is doubt as to such a statute's scope, it should be construed most strongly in favor of the citizen and against the state."

*See also Comptroller v. John C. Louis Co.,* 285 Md. 527, 539, 404 A.2d 1045, 1053 (1979); *Comptroller v. Mandel Re-Election Com.,* 280 Md. 575, 580, 374 A.2d 1130, 1132 (1977), quoting *Magruder v. Hospelhorn,* 173 Md. 62, 72, 194 A. 839, 844 (1937); *Comptroller v. Burn Brae Dinner Theatre,* 72 Md.App. 314, 320–321, 528 A.2d 546, 550 (1987).

◼ Because the instant case involves a delegation of the tax power to Anne Arundel County, a court should strictly construe the language of Art. 24, § 9–602(a). Section 9–602(a) authorizes the County to impose a sales or use tax on "space rentals." The section does not expressly refer to the taxability of services used in conjunction with the space rental, nor does it define the words "space rental." When the words of a statute are left undefined by the Legislature, they "should be construed as having [their] ordinary and commonly-accepted meaning." *Scoville Service, Inc. v. Comptroller,* 269 Md. 390, 395, 306 A.2d 534, 537 (1973); *Reinhardt v. Anne Arundel Co.,* 31 Md.App. 355, 362, 356 A.2d 917, 921 (1976). In *Reinhardt,* to determine whether an earlier version of § 9–602 was unconstitutionally vague, the Court of Special Appeals consulted Webster's Third New International Dictionary, Unabridged (1971) for the definitions of space and rental (31 Md.App. at 362, 356 A.2d at 921):

" 'Space—2a: a limited extension in one, two, or three dimensions: a part marked off or bounded in some way.' "

" 'Rental—2: an amount paid or collected as rent: income from rent: . . . return (as a sum of money) given or received as rent.' "

The American Heritage Dictionary of the English Language (1969) defines rent as "[p]ayment, usually of an amount fixed by contract, . . . for the right to occupy . . . the property of another." Under these definitions, "space rental" is the paid-for *occupation* of a bounded area. This meaning does not embrace any separately charged services offered in conjunction with the rental.

Furthermore, the legislative history of § 9–602 does not disclose the General Assembly's intention to authorize a tax on a separate charge for marina services. The County points out that in Ch. 563 of the Acts of 1981, § 9–602 was amended to read as follows (emphasis added):

"(a) The County Council for Anne Arundel may by ordinance levy, impose, and collect a sales or use tax *upon the goods and services specified in this section.*

"(b)(1) The tax may be imposed upon fuels and utilities used by commercial and industrial businesses; residential, commercial and industrial telephone service; and space rentals."

According to the County, the inclusion of the phrase "goods and services" is an indication that the General Assembly intended to allow the County to tax services incidental to the space rental. The amendment, however, cannot reasonably be construed to enlarge the scope of the taxing power. It is merely descriptive of the specific taxable items enumerated in the section. In addition, the County overlooks the fact that the phrase was deleted from the statute by Ch. 2, § 2, of the Acts of 1988.

The County's own regulations and guidelines seem to exempt the use of the forklift and other marina services from the boat slip tax. Section IIA of the Rules and Regulations provide:

"The rate of tax is 10% and is effective July 1, 1975. The tax is levied on money received for space rental, docking or storage. *In the event that there are other charges, i.e., charges for crane rental, hauling or the like, included with the charge for space rent, storage or docking, such amounts are to be excluded from the taxable amount....*" (emphasis added).

The County argues that this regulation exempts from the boat slip tax only those separately stated charges that are not for the purpose of docking and storing of boats. The County suggests, as an example, the situation in which a forklift is used to remove a boat from the water for repairs. This argument is dubious. Under the County's interpretation of the regulation, whenever the forklift is engaged to remove a boat from the boatel, it would also not be taxable, because the purpose for taking the boat out of the boatel is not for docking and storing but for use on the water. We do not believe that the regulation is susceptible to the County's construction. The regulation represents an administrative construction both of § 9–602 and of the county ordinance which supports the taxpayer's position in the present case. Such administrative construction is entitled to considerable weight. *Md. Classified Employees v. Governor,* 325 Md. 19, 33, 599 A.2d 91, 98 (1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1160, 117 L.Ed.2d 407 (1992); *Falik v. Prince George's Hosp.,* 322 Md. 409, 416, 588 A.2d 324, 327 (1991); *Fishkind Realty v. Sampson,* 306 Md. 269, 283, 508 A.2d 478, 485–486 (1986) ("Generally when this Court construes a statute, it gives weight to settled administrative practice under that statute as long as the administrative practice is not inconsistent with the plain statutory language") (emphasis deleted).

The County Sales Tax Division's guidelines, although now purportedly abandoned by the County, also indicate that the County has construed the enabling act and the ordinance as excluding from taxation the separately charged cost of forklift and other marina services:

"As to when a crane is in actual use in lifting a given customer's boat in and out of storage, this service, only if

separately invoiced, may be charged to a given customer as a separate non-taxable service."

The only prerequisite to the tax exemption for the forklift is that the cost be separately stated. Pleasure Cove has stated separately its charge for the forklift and other marina services. Although the guidelines may not be entitled to as great a weight as interpretive regulations, they do provide an indication as to how the County believed the boat slip tax should be administered and thus represent an administrative interpretation of the state enabling act and of the county ordinance.

We hold that Art. 24, § 9–602, authorizes Anne Arundel County to tax the consideration for the space rental only and not the consideration for marina services, such as involved in this case, which are set forth separately from the space rental charge.[11]

*JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AFFIRMED. ANNE ARUNDEL COUNTY TO PAY COSTS.*

---

11. There is a caveat to our holding in this case. The County suggests that, if the separately stated services are not taxable, the marina might charge only a nominal fee, such as $1.00, for the space rental and a great deal more for the incidental services (Reply Brief of Appellant at 13–14). If such a sham were to occur, we would agree with the County that the separately stated amount for the services would be taxable. It has not been suggested in the present case, however, that the separately stated amount for the slip rental, outside rack rental, or boatel rental is artificially low or below the fair market value.