683 A.2d 512

The CHESAPEAKE AND POTOMAC TELEPHONE
COMPANY OF MARYLAND, et al.

v.

DIRECTOR OF FINANCE FOR THE MAYOR
AND CITY COUNCIL OF BALTIMORE

No. 97, Sept.Term, 1995.

Court of Appeals of Maryland.

Oct. 9, 1996.

Kaye B. Bushel (T. Scott Basik, Basik, Bushel & Shelton, on brief); Price O. Gielen, Neuberger, Quinn, Gielen, Rubin & Gibber, P.A., Baltimore, for Charles Towers Partnership, et al.; Melvin J. Kodenski, Christopher M. Lee, Kodenski and Canaras, Baltimore, for appellant Santoni's, Inc.

Melvin J. Sykes (Otho M. Thompson, Deputy Sol., Carolyn A. Espy, Principal Counsel, Abraham M. Schwartz, Asst. Sol., on brief), Baltimore, for Respondent.

Argued before MURPHY,* C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

BELL, Judge.

We granted certiorari in this case to consider whether, pursuant to Baltimore City Code (1983 Repl.Vol. & 1993 Cum.Supp.) Article 28, § 55(a)(1), a tax levied on the "gross sales price" of "sales for consumption" of electricity applies to certain charges on the petitioners' monthly electric bills that do not vary in proportion to the amount of electricity consumed. On motion for summary judgment, the Maryland Tax Court concluded that the charges at issue were not "sales for consumption" of electricity, and, therefore, the City ordinance did not provide for their taxation. The Circuit Court for Baltimore City affirmed the Tax Court's decision. On appeal, the Court of Special Appeals reversed the judgment of the circuit court. *Director of Finance v. Charles Towers,* 104 Md.App. 710, 657 A.2d 808 (1995). At the petitioners' request, we granted the writ of certiorari. We shall affirm the judgment of the intermediate appellate court.

## I.

The facts in this case are largely undisputed; indeed, most were stipulated by the parties. Ordinance 745 of the Mayor and City Council of Baltimore, approved December 23, 1946, was enacted for the purpose of taxing, during 1947, *inter alia,* all sales for consumption for nonresidential uses of artificial or natural gas and electricity delivered in Baltimore City. Subsequently, Ordinance 108 continued the tax for the succeeding

---

* Murphy, C.J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and the adoption of this opinion.

years 1948–51. It was codified in the Baltimore City Code at Article 37, § 76. Thereafter, Ordinance 88, permanently prescribing the utilities tax, was approved November 20, 1951. Although that provision has been amended frequently since 1951, including its scope, the portion relevant to this appeal has remained essentially unchanged.[1] Now codified in Article 28, § 55 provides, in pertinent part:

(a)(1) Artificial or natural gas, electricity, and steam rates. There is hereby levied and imposed on all sales for consumption of artificial or natural gas, electricity and steam delivered in Baltimore City through pipes, wires or conduits within the limits of Baltimore City, hereinafter

---

1. As originally enacted, the ordinance provided:

*Section 1. Be it ordained by the Mayor and City Council of Baltimore*, That during the year 1947, there is hereby levied and imposed on all sales for consumption, except as made under the residential schedules applicable to the City of Baltimore on file with the Public Service Commission of Maryland (designated schedules R. City, D. City and DH) of artificial or natural gas and electricity delivered in Baltimore City through pipes, wires or conduits and on all sales of service for the transmission of messages by non-residential telephones within the limits of Baltimore City, billed in 1947, a tax at the rate of five percentum (5%) upon the gross sales price thereof. Every person, firm, or corporation making any such deliveries or sales within the City of Baltimore shall collect said tax from the purchasers of said products or services and report the same, under oath, on or before the 15th day of the succeeding calendar month to the City Collector, upon forms to be supplied by him, and pay to the City Collector the amount collected from the said purchasers during the preceding calendar month. The tax imposed by this ordinance shall not apply to sales to the United States, the State of Maryland or the City of Baltimore, or any agency of any of them, nor shall it apply to hospitals, churches, charitable institutions and other non-profit organizations.

The City Collector is hereby authorized to adopt such rules and regulations as may be necessary to insure the collection of the tax imposed by this ordinance.

*Sec. 2. And be it further ordained*, That any person, firm or corporation refusing or failing to comply with the provisions of this ordinance, or making a false statement or improper return, and any purchaser of such products or services refusing to pay the tax imposed by this ordinance, shall be guilty of a misdemeanor and upon conviction thereof, be subject to a fine of not more than Five Hundred Dollars ($500.00) for each such offense.

referred to as "energy sales," and billed after the effective date hereof, a tax at the rate of 8% upon the gross sales price thereof.

The monthly electricity bills the taxpayers received from BGE contained separately stated charges for each component of the gross sales price of electricity as required by the Public Service Commission ("PSC").[2] Accordingly, the total bill for electricity sold to the taxpayers included the following charges:

(1) *Customer Charge*—is designed to recover metering, billing, and other administrative costs of BGE associated with the production, transmission, distribution and sale of electricity. It is billed based on a fixed monthly rate.

(2) *Demand Charge*—is designed to recover the costs associated with the equipment and facilities needed to produce, transmit, and distribute electricity. It is billed by first identifying the half-hour during the month in which a consumer's use of electricity was greatest, as measured in kilowatts, and then multiplying the number of kilowatts consumed by a fixed dollar amount.

(3) *Energy Charge*—is based on total energy consumption during the month in kilowatt hours.[3]

(4) *Fuel Rate Charge*—is designed to recover BGE's fuel costs related to the electricity sold by it. It is calculated by

---

*Sec. 3. And be it further ordained,* That this ordinance shall take effect from the date of its passage.

**2.** According to the PSC, the reason the different cost components are not combined into a single commodity price is because a multi-part rate allows a utility's total costs involved in production and sale of electricity to be fairly allocated among the various classes of customers it is obliged to serve. Affidavit of Alan D. Hames, PSC Director of Rate Research & Economics Division.

**3.** In the case of residential customers, and non-residential customers with monthly electricity demands of less than 60 kilowatts, all costs, including the customer and demand charges, are included as part of the energy charge. The rate schedule applicable to the taxpayers in this case is Schedule GL, General Service Large—Electric, which is used only where a customer has established a monthly demand of 60 kilowatts or more.

multiplying total kilowatt hour usage for the billing period by the dollar amount of the current fuel rate.[4]

The City sales tax, pursuant to Art. 28, § 55(a)(1), was collected on the aggregate of the monthly customer charge, demand charge, energy charge and fuel rate charge.

In 1991, each of the petitioners in this case, C & P Telephone Co., Santoni's Inc., Charles Towers Partnership, Apartment Services, Inc., and United Holdings Co. Inc. ("the taxpayers") filed separate claims with the respondent, the Director of Finance for the Mayor and City Council of Baltimore ("the Director") for refund of the 8% utility tax paid on the customer and demand charges for which Baltimore Gas & Electric ("BGE") billed them over the preceding three years.[5] The customer and demand charges, unlike the energy and fuel rate charges, were not calculated based on the actual amount of electricity consumed. Therefore, the taxpayers contended that these charges were not "sales for consumption" and should not be taxed.

After six months elapsed with no determination from the director as to the validity of their claims, the taxpayers, pursuant to Maryland Code (1957, 1994 Repl.Vol.) Article 24, § 9–712(d)(2) and Maryland Code (1988, 1996 Cum.Supp.), § 13–510(b), of the Tax–General Article[6] treated the claims as

---

4. The taxpayers' bills also included an electric environmental surcharge as mandated by Maryland Code, Natural Resources Art. § 3–302, and a Maryland sales tax.

5. BGE collected the tax at issue as an agent for the City. It then forwarded the monies collected each month to the City Finance Department.

6. Article 24, § 9–712(d)(2) provides:
   (2) If a tax collector does not make a determination on a claim for refund within 6 months after the claim is filed, the claimant may:
   (i) Consider the claim as being disallowed; and
   (ii) Appeal the disallowance to the Tax Court.
   Section 13–510(b) of the Tax General Article provides:
   (b) *Exception when no action taken on claim for refund.*—If a tax collector does not make a determination on a claim for refund within 6 months after the claim is filed, the claimant may:
   (1) consider the claim as being disallowed; and

denied and appealed to the Maryland Tax Court.[7] In that court, all parties filed motions for summary judgment, along with supporting affidavits. Because each of the taxpayers' motions addressed the same issue, the Tax Court consolidated them for hearing. Finding no genuine dispute as to any material fact, and persuaded by its reasoning in *Baltimore County v. Blue Circle Atlantic*, Misc. Nos. 684–688 (Aug. 15, 1990), the Tax Court granted summary judgment in favor of the taxpayers. It determined, as a matter of law, "[t]hat Article 28, § 55(a)(1) of the Baltimore City Code (the 'City Ordinance') does not authorize the assessment and collection of the public utilities tax on 'demand charges' and 'customer charges' as those charges are not sales of electricity actually consumed." Therefore, on December 14, 1993, the Tax Court ordered the Director to refund with interest to the taxpayers the taxes they paid on such charges.[8] The Director sought

---

(2) appeal the disallowance to the Tax Court.

7.  Upon filing his answer, the Director requested and was granted by the Tax Court, postponement of consideration of the taxpayers' claims pending the outcome of *Baltimore County v. Blue Circle Atlantic*, No. 1504 Sept. Term 1991, 92 Md.App. 735 (June 25, 1992), *cert. denied*, 328 Md. 92, 612 A.2d 1315 (1992), in the Court of Special Appeals. In that case, the Tax Court held that § 11–60 of the Baltimore County Code, which, as to sales of electricity, is virtually identical to the Baltimore City ordinance, was not properly imposed on customer and demand charges paid by the claimants, and thus ordered refunds. *Baltimore County v. Blue Circle Atlantic*. Md. Tax Ct. Misc. Nos. 684–688 (Aug. 15, 1990). The Court of Special Appeals affirmed that decision in an unreported opinion. *Blue Circle, supra.*

The Baltimore County ordinance provides, in pertinent part:

(a) Pursuant to the power and authority contained in § 11–15 of this Code, there is hereby levied and imposed on all sales for consumption of electricity delivered in the county, through wires or conduits, a tax at the rate of seven and one-half (7.5) percent on the gross sales thereof, subject to the provisions of subsection (b) of this section.

Baltimore County Code, § 11–60(a) (1978 & Supp.1988–89).

8.  The amounts to be refunded to the taxpayers were as follows:

| | |
|---|---|
| C & P Telephone Co. | $152,205.37 |
| Charles Towers Partnership | $ 16,196.34 |
| Baltimore Budget Hotel Partnership | $ 4,107.47 |

judicial review in the Circuit Court for Baltimore City.[9]  After a hearing on the merits, that court held that:

> [T]he findings of the Tax Court are correct.  It is the language of the statute that convinces me.  [I]t just doesn't make common sense to apply any other language to this other than sales of electricity which is actually consumed. . . .  So . . . I'm mak[ing] a finding that the order of the . . . Tax Court is hereby affirmed.

Thereafter, the Director appealed to the Court of Special Appeals, arguing, *inter alia,* that the plain and unambiguous meaning of the City Ordinance required inclusion of the customer and demand charges in the "gross sales price" on which the ordinance imposes the tax, and that the Tax Court and the circuit court failed to accord due deference to the administrative construction of the statute by the Director as authorized by Baltimore City Code, Art. 28, § 55(d).[10]

The Court of Special Appeals reversed the judgment of the circuit court.  *Director of Finance, supra,* 104 Md.App. at 730, 657 A.2d at 818.  Although it did not find the ordinance to be "plain and free from ambiguity," *id.* at 715, 657 A.2d at 811, the intermediate appellate court nevertheless held that the phrase "sales for consumption" meant "retail sales" of electricity, specifically, those purchases made by the ultimate consumers of the electricity, as opposed to those purchases made "for the purpose of reselling electricity to other consumers." *Id.*

---

| | |
|---|---|
| Apartment Services, Inc. | $  6,906.93 |
| United Holdings Co. | $ 45,337.99 |
| Santoni's Inc. | $  5,113.94 |

**9.**  The Director sought judicial review in three cases:  (1) C & P Telephone Co., (2) Charles Towers Partnership, Baltimore Budget Hotel Partnership, Apartment Services, Inc., and United Holdings Company, Inc., and (3) Santoni's Inc.  The cases were consolidated by the circuit court.

**10.**  Section 55(d) provides:

> *Regulations*—The Director of Finance is hereby authorized to adopt such rules and regulations as may be necessary to insure the collection of the tax imposed by this section and to define any terms used in this section.

at 718, 657 A.2d at 812. The correctness of its interpretation of the phrase was confirmed, the court stated, by the Director's administrative interpretation of the ordinance, which was "entitled to significant weight." *Id.* at 722–23, 657 A.2d at 815.

The taxpayers petitioned for certiorari and the Director filed a conditional cross petition. Although we granted both the taxpayers' petition and the Director's conditional cross petition,[11] our resolution of the issue the taxpayers raise. makes consideration of the conditional cross appeal unnecessary.

## II.

### A.

■ In their brief, the taxpayers[12] contend that the Tax Court correctly interpreted the ordinance as imposing the electricity tax only on charges based on the amount of electricity actually consumed, namely, the energy and fuel rate charges. They maintain that the Tax Court's interpretation of the ordinance comports with the rules of statutory construction. In this regard, they submit that the Tax Court first concluded that the language of the ordinance was clear and unambiguous and then "simply applied the ordinary meaning

---

**11.** The conditional cross appeal was filed on the issue of whether the ordinance plainly and unambiguously required "the inclusion of customer and demand charges as components of the gross sales price of electricity sold to the taxpayers, to which the statutory 8% rate is to be applied."

**12.** In the present appeal, the petitioners Charles Towers Partnership, Baltimore Budget Hotel Partnership, Apartment Services, Inc., United Holdings Co. Inc., and Santoni's Inc., have adopted by reference the entire brief filed by the petitioner C & P telephone Co., pursuant to Maryland Rule 8–503(f). That rule states:

> *Incorporation by Reference.*—In a case involving more than one appellant or appellee, any appellant or appellee may adopt by reference any part of the brief of another.

of those words." Thus, the taxpayers conclude that the Tax Court's decision was legally correct.[13]

The taxpayers further maintain that the Court of Special Appeals "reweigh[ed] and reinterpret[ed]" the facts in this case and then applied its own construction of the law to those facts. As evidence of such behavior, the taxpayers point to, *inter alia,* the intermediate appellate court's decision to give significant weight to the City's long-standing administrative practice of treating the ordinance as a tax on retail sales of electricity. *Id.* at 721–22 & n. 5, 657 A.2d at 814 & n. 5.

The taxpayers contend, however, that despite this administrative practice, the only evidence in the record demonstrating such an application of the tax is the affidavit of Ottavio Grande, the City Collector. In that affidavit, Mr. Grande stated that the City does not, nor has it ever, collected electricity taxes from a waste processing facility known as Baltimore Refuse Energy Systems Co. ("BRESCO"), because BRESCO is not the ultimate consumer of electricity, but rather a reseller. Nevertheless, the taxpayers argue that this affidavit is wholly insufficient to demonstrate that the City made its taxability determinations based on whether the transaction was retail or wholesale in nature.[14]

Finally, the taxpayers contend that this Court's holding in *Controller v. Pleasure Cove,* 334 Md. 450, 639 A.2d 685 (1994), in which we interpreted Anne Arundel County's so-called "boat slip tax," is "equally applicable to this tax on the

---

13. The grant of summary judgment is reviewed to determine "whether the trial court was legally correct." *Heat & Power Corp. v. Air Products & Chemicals, Inc.,* 320 Md. 584, 591, 578 A.2d 1202, 1206 (1990) (citations omitted), *See Hartford Ins. Co. v. Manor Inn,* 335 Md. 135, 144, 642 A.2d 219, 224 (1994); *Beatty v. Trailmaster Products, Inc.,* 330 Md. 726, 737, 625 A.2d 1005, 1011 (1993).

14. In deciding this case, we need not address the issue of the City's long-standing administrative practice relative to the ordinance because we find it to be plain and unambiguous. *See e.g., Falik v. Prince George's Hosp.,* 322 Md. 409, 416, 588 A.2d 324, 327 (1991) "( [W]hen statutory language is unambiguous, administrative constructions, no matter how well entrenched, are not given weight."); *Macke Co. v. Comptroller,* 302 Md. 18, 22, 485 A.2d 254, 257 (1984) (same).

consumption of electricity." Accordingly, the taxpayers argue that, just as in *Pleasure Cove,* where the boat slip rental charge was separately stated on the bill from the charges for other marina services, and in which we held that the County was not authorized to impose the boat slip tax on the charges for those other services, 334 Md. at 461, 639 A.2d at 691, the customer and demand charges in the instant case are for something other than the subject of the tax. In addition, the taxpayers note that, as in *Pleasure Cove,* the tax at issue is not a general retail sales tax, but rather a tax on a specific item, namely, sales for consumption of electricity. On this basis, the taxpayers conclude that, inasmuch as customer and demand charges are not sales for consumption, the imposition of the electricity tax on them "exceeds the scope of the taxing statute."

## B.

On the City's behalf, the Director contends that the taxpayers have muddied the distinction between the subject of the tax and the method by which the amount of tax is calculated. The subject of the tax, according to the Director, is "sales for consumption of . . . electricity." He thus points out that it is undisputed that the taxpayers consumed all of the electricity BGE sold them. As to the calculation of the tax, the Director, also citing *Pleasure Cove, supra,* 334 Md. at 461–63, 639 A.2d at 691–92, maintains that customer and demand charges are an integral part of the "gross sales price"[15] of electricity because "they cover [a] part of the cost of producing, transmitting and selling electricity that is covered by no other component of the price charged by BGE for the electricity purchased and consumed by [the taxpayers]." He concludes, therefore, that the manner in which the components of the gross sales price are calculated has no bearing on whether there is a sale for consumption of electricity.

---

**15.** According to the Director, the "gross sales price" includes all of the charges that cover BGE's costs of producing, transmitting and selling electricity, along with the monetary return authorized by the PSC.

Consequently, the Director submits that the Tax Court's decision was premised on an erroneous conclusion of law, there being no support in the text of the ordinance for the taxpayers' contention that, to be taxable, every component of the gross sales price must vary directly with the amount of electricity sold. As the Director sees it, the City Council's purpose in emphasizing that the *gross* sales price was to be taxed at a stated rate "was to make clear that *every* component of the price of electricity sold for consumption was to be included in that amount." The Respondent's Brief at 24.

The Director also notes, as did the Court of Special Appeals, that for residential customers and non-residential customers with a demand of less than 60 kilowatts, all costs of providing electricity are included in the energy rate. *Director of Finance, supra,* 104 Md.App. at 720, 657 A.2d at 813. Accordingly, he asserts, the term "gross sales price" should not encompass fewer costs of providing the taxpayers in this case with electricity than it does for providing electricity for consumption by residential customers or non-residential customers with a demand of less than 60 kilowatts.

## III.

As is customary in statutory construction cases, we begin our analysis by reviewing the pertinent rules. Of course, the cardinal rule is to ascertain and effectuate legislative intent. *Oaks v. Connors,* 339 Md. 24, 35, 660 A.2d 423, 429 (1995); *Montgomery County v. Buckman,* 333 Md. 516, 523, 636 A.2d 448, 451 (1994); *Condon v. State,* 332 Md. 481, 491, 632 A.2d 753, 755 (1993). To this end, we begin our inquiry with the words of the statute and, ordinarily, when the words of the statute are clear and unambiguous, according to their commonly understood meaning, we end our inquiry there also. *Oaks, supra,* 339 Md. at 35, 660 A.2d at 429; *Buckman, supra,* 333 Md. at 523, 636 A.2d at 451; *Condon, supra,* 332 Md. at 491, 632 A.2d at 755; *Harris v. State,* 331 Md. 137, 145–46, 626 A.2d 946, 950 (1993).

■ Where the statutory language is plain and unambiguous, a court may neither add nor delete language so as to "reflect an intent not evidenced in that language," *Condon, supra,* 332 Md. at 491, 632 A.2d at 755, nor may it construe the statute with " 'forced or subtle interpretations' that limit or extend its application." *Id.* (quoting *Tucker v. Fireman's Fund Insurance Co.,* 308 Md. 69, 73, 517 A.2d 730, 732 (1986)). Moreover, whenever possible, a statute should be read so that no word, clause, sentence or phrase is rendered superfluous or nugatory. *Buckman, supra,* 333 Md. at 524, 636 A.2d at 452; *Condon, supra,* 332 Md. at 491, 632 A.2d at 755.

■ Applying these principles to the case *sub judice,* we are of the opinion that the Tax Court, in interpreting Art. 28, § 55(a)(1), reached its result based on an erroneous conclusion of law. Consequently, we are "under no statutory constraints in reversing [it]." *Ramsay, Scarlett & Co. v. Comptroller,* 302 Md. 825, 834, 490 A.2d 1296, 1301 (1985); *Supervisor of Assessments v. Carroll,* 298 Md. 311, 318, 469 A.2d 858, 861 (1984); *Comptroller v. Mandel Re-election Committee,* 280 Md. 575, 578, 374 A.2d 1130, 1131–32 (1977).

As we have seen, the Tax Court, in its summary judgment orders issued in favor of the taxpayers, found, as a matter of law, that § 55(a)(1) "does not authorize the assessment and collection of the public utilities tax on 'demand charges' and 'customer charges' as those charges are not sales of electricity *actually* consumed." (Emphasis added). In reaching this conclusion, however, the Tax Court imported language into the ordinance that impermissibly altered its meaning. *Condon, supra,* 332 Md. at 491, 632 A.2d at 755. Nowhere in § 55(a)(1) does it state that the tax is to be levied on sales of electricity for "actual" consumption. Rather, it clearly states that the tax is to be imposed on "all sales for consumption." In our view, the operative word in that phrase is "sales," as that is the unit of consideration on which the City Council imposed the tax.

Having thus established that "sales" of electricity for consumption are the taxable event under § 55(a)(1), to be taxable,

a sale needs only to be *"for* consumption," (emphasis added), not actually consumed. In the instant case, it is undisputed that the sales of electricity were for consumption. Clearly then, as the Director quite correctly notes, the manner in which the components of the gross sales price are calculated has no bearing on whether a sale is for consumption.

Section 55(a)(1) plainly states that the 8% tax is levied on the "gross sales price" of "all sales for consumption." That being so, we agree with the Director and the Court of Special Appeals that by using the adjective "gross" to modify the phrase "sales price," the City Council evidenced an intent to tax the entire sales price.[16] *Director of Finance, supra,* 104 Md.App. at 723, 657 A.2d at 815. To be sure, construing the ordinance in the manner the taxpayers suggest, namely, so as to tax some, but not all, of the components of the sales price would effectively render the word "gross" unnecessary, a result which is not consonant with the rules of statutory construction. *Buckman, supra,* 333 Md. at 524, 636 A.2d at 452, *Condon, supra,* 332 Md. at 491, 632 A.2d at 755.

Because we have concluded that the ordinance clearly requires the taxation of the entire sales price, and because even the taxpayers themselves concede that customer and demand charges are "part of the total price charged for the provision of electricity," it follows that the customer and demand charges are part of the gross sales price to which the 8% tax rate is to be applied. The fact that BGE bills separately identify and specify the various components of the utility's costs in providing electricity to the class of customers to which the taxpayers belong, including its fixed costs, does not change the fact that the sales, as a whole, are for consumption. In addition, as the Director also points out, the only reason that all components are not combined into a single commodity price, as they are for residential customers and non-residential customers with monthly demands of less than 60 kilowatts, is

---

**16.** Webster's New World Dictionary of the American Language 617 (2d ed. 1980) defines the word "gross" as "total; entire; with no deductions[.]"

because the PSC has required a multi-part rate so as to allocate fairly costs among BGE's various customer classes.[17]

In sum, we believe our decision in this case is compelled by the plain, unambiguous language of the statute. Although we arrive at the same ultimate result, in this respect, our analysis differs from that of the Court of Special Appeals. *See Director of Finance, supra,* 104 Md.App. at 718, 657 A.2d at 812. Like that court, however, we too are persuaded that this Court's opinions in *Baltimore Country Club v. Comptroller,* 272 Md. 65, 321 A.2d 308 (1974), and *Pleasure Cove,* likewise dictate this result. The analysis applied in those cases confirms the result dictated by the words of the statute. *See Prince George's County v. Vieira,* 340 Md. 651, 658, 667 A.2d 898, 901 (1995); *Mayor & City Council of Baltimore v. Cassidy,* 338 Md. 88, 98, 656 A.2d 757, 762 (1995); *State v. Thompson,* 332 Md. 1, 7, 629 A.2d 731, 732 (1993).

*Baltimore Country Club* dealt with the Maryland Retail Sales Tax.[18] That statute defined a retail sale as, *inter alia* "the sale of any meals, food or drink for human consumption on the premises where sold." 272 Md. at 66, 321 A.2d at 309. Baltimore Country Club, the petitioner in the case, for many years had added to its stated price for the food and beverages served to its members, and collected on behalf of its employees, a 15% mandatory gratuity or "service charge." The Comptroller of the Treasury considered these service charges to be part of the "price" of the Club's retail sales. Therefore, the Comptroller levied a sales tax against the Club for the amount of all the service charges. On appeal, agreeing with the Comptroller, we explained:

---

**17.** *See Re Baltimore Gas and Electric Co.,* 73 PSC 6 (1982) (discussing the establishment of the electricity rate schedules the PSC authorizes BGE to file). *See also supra* note 3.

**18.** The Retail Sales Tax Act is now codified in Maryland Code (1988, 1996 Cum.Supp.), § 11–101 *et seq.* of the Tax General Article. When our opinion in *Baltimore Country Club v. Comptroller,* 272 Md. 65, 321 A.2d 308 (1974) was issued, the Act was codified in Maryland Code (1969 Repl.Vol.) Article 81, § 324 *et seq.*

[I]n making sales of food and beverages to its members, service is always provided by the Club as an integral part of the transaction. The mandatory service charge imposed by the Club as part of the sale is a legally binding contractual obligation upon the purchaser, one "automatically and invariably" levied and required to be paid as a constituent part of the "price" of the sale.

*Id.* at 73, 321 A.2d at 312. In the instant case, as in *Baltimore Country Club,* the customer and demand charges are "an integral part of the transaction" of selling electricity to the taxpayers for consumption. These charges constitute part of the "legally binding contractual obligation" the taxpayers entered into upon purchasing electricity from BGE.[19]

We contrast the result in *Baltimore Country Club* with our more recent decision in *Pleasure Cove.* That case, as we have seen, concerned the scope of Maryland Code (1957, 1990 Repl.Vol.) Article 24, § 9–602, which authorized Anne Arundel County to collect a tax on "space rentals" for the storage or docking of boats ("boat slip tax"). In addition to membership dues, Pleasure Cove Yacht Club charged its members a fee for boat slip rentals, outside storage space or boatel rentals.[20] Prior to 1989, the fee included the cost of certain marina services, such as electricity, trash removal, ice removal, security, etc. The entire rental fee was subject to the boat slip tax. In 1989, Pleasure Cove concluded that marina services were not taxable. Therefore, Pleasure Cove began charging separately for the marina services, applying the tax only to the remaining rental fee. The County Controller's Office subse-

---

**19.** The taxpayers' effort to distinguish *Baltimore Country Club,* from the instant case on the ground that in *Baltimore Country Club* the tax was a general retail sales tax, whereas in this case, as in *Controller v. Pleasure Cove,* 334 Md. 450, 639 A.2d 685 (1994), the tax is levied on a specific item, namely, sales for consumption of electricity, is unavailing. As we see it, the unit of consideration for purposes of applying the tax is of primary importance, while the nature of the tax, *i.e.,* specific or general, is a secondary consideration.

**20.** As explained in *Pleasure Cove,* 334 Md. at 453 n. 1, 639 A.2d at 687, n. 1, a boatel is "a building containing multi-tiered racks on which the boats are stored."

quently decided that the marina services should have been subject to the boat slip tax. Siding with the taxpayers, we pointed out that:

> With regard to the *Baltimore Country Club* case, restaurant service is inherently necessary to the sale of restaurant meals and is usually not optional. Thus, the price of a meal typically reflects the cost to the restaurant of serving the meal.
>
> The marina services involved here, on the other hand, are not inherently necessary to the wet slip, outside rack, or boatel rental. Boat slip renters are capable of performing the marina services on their own and quite often do.

334 Md. at 462–63, 639 A.2d at 691–92.

Thus, in contrast to *Baltimore Country Club* and the instant case, the marina services were not "inherently necessary" to the provision of boat slip rentals. In this case, however, it is undisputed that the charges at issue are not for something other than electricity; rather, they are separately stated components of the price of electricity, the sale of which is the taxable event.

Being mindful of the principles we enunciated in *Baltimore Country Club* and most recently in *Pleasure Cove,* we conclude that Art. 28, § 55(a)(1) contemplates the inclusion of customer and demand charges within the "gross sales price" of "sales for consumption" of electricity to which the 8% tax rate is applicable.

*JUDGMENT AFFIRMED, WITH COSTS.*